RHONDA D. KRAEBER, SBN 154665
KRAEBER LAW OFFICE
1191 Central Boulevard, Ste. C
Brentwood, CA 94513
Telephone:   (925) 513-1264
Facsimile:    (925) 392-0433
Rhonda@KraeberLaw.com

TODD BOLEY, SBN 68119
ZOYA YARNYKH, SBN 258062
2831 Mariner Square Dr., Ste 280
Alameda, CA 94501
Telephone: (510) 836-4500
Facsimile: (510) 649-5170

PETER W. ALFERT, SBN 83139
HINTON ALFERT & KAHN LLP
200 Pringle Ave., Suite 450
Walnut Creek, California  94596
Telephone: (925) 279-3009
Facsimile:  (925) 279-3342

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANNA WORMUTH, SCOTT WORMUTH and H.W, a minor, by and through his guardians ad litem ADRIANNA WORMUTH and SCOTT WORMUTH,<br><br>Plaintiffs,<br><br>v.<br><br>LAMMERSVILLE UNION SCHOOL DISTRICT, JAMES YEAGER, DAWN IBBS, TERESA HAUN, KIRK NICHOLAS, AND KHUSHWINDER GILL, and DOES 1-30,<br><br>Defendants. | Case No. 2:15-cv-01572-KJM-EFB<br><br>**AMENDED COMPLAINT FOR DAMAGES**<br><br>JURY DEMAND |

Plaintiffs Adrianna Wormuth, Scott Wormuth and H.W., a minor by and through his

guardian ad litem Adrianna Wormuth and Scott Wormuth allege as follows:

**JURISDICTION AND VENUE**

1.      Jurisdiction of Plaintiffs' federal law claims is founded upon 28 U.S.C. 1331 (federal questions jurisdiction), 28 U.S.C. 1343 (a)(3) (federal civil rights jurisdiction), and 28 U.S.C. 1983.

**INTRADISTRICT ASSIGNMENT**

2.      This case arose in San Joaquin County, California. Pursuant to Rule 120of the Local Rules of the Eastern District of California, it should be assigned to the Sacramento Division of the Eastern District Court.

**PARTIES**

3.       Plaintiff ADRIANNA WORMUTH is a resident of the City of Mountain House, County of San Joaquin, California. She brings this action on her own behalf and as guardian ad litem on behalf of her son H.W.

4.      Plaintiff SCOTT WORMUTH is a resident of the City of Mountain House, County of San Joaquin, California. He brings this action on his own behalf and as guardian ad litem on behalf of his son H.W.

5.      Plaintiff H.W. is a minor and a resident of the City of Mountain House, County of San Joaquin, California.

6.      Defendant LAMMERSVILLE SCHOOL DISTRICT (LUSD or District) is a public entity duly incorporated and operating under California law as a school district.

7.      Defendant JAMES YEAGER (YEAGER) is the principal of Altamont Elementary School in LUSD. All actions alleged herein by YEAGER were taken in the course and scope of his employment with LUSD.

8.      Defendant DAWN IBBS (IBBS) is the speech and language pathologist of LUSD. All actions alleged herein by IBBS were taken in the course and scope of her employment with LUSD.

9.      Defendant TERESA HAUN (HAUN) was a Transitional Kindergarten teacher at Altamont Elementary School in LUSD. All actions alleged herein by HAUN were taken in the course and scope of her employment with LUSD.

10.     Defendant KIRK NICHOLAS (NICHOLAS) is the Superintendent of LUSD. All actions alleged herein by NICHOLAS were taken in the course and scope of his employment with LUSD.

11.     Defendant KHUSHWINDER GILL (GILL) is the Assistant Superintendent of LUSD.  All actions alleged herein by GILL were taken in the course and scope of her employment with LUSD.

12.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 - 30, are unknown to plaintiffs who therefore sue said defendants by such fictitious names and will ask leave of Court to amend this complaint when the true names and capacities have been ascertained.  Plaintiffs are informed and believe, and thereon allege on such information and belief, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged which actions or inactions proximately caused plaintiffs' injuries as herein alleged.  Plaintiffs are uncertain as to the manner or function of said defendants, and plaintiffs pray leave to amend this complaint to insert true names, capacities, functions, occupations and businesses of said defendants when the same are ascertained.

**FACTS**

13.     Plaintiffs have complied with the claim presentation requirements of the California Government Tort Claims Act. LUSD denied Plaintiffs' claim on or about January 26, 2015.

14.     Plaintiff H.W. was born on August 14, 2009. Plaintiff ADRIANNA WORMUTH is his mother, and SCOTT WORMUTH is his father.

15.     H.W. has been diagnosed with speech delay, qualifying him for special education services (IEP).

16.     H.W. was a student at Altamont Elementary School (Altamont) during the 2014-2015 school year.  He began attending the Transitional Kindergarten Program at Altamont in or about August 2014.

AMENDED COMPLAINT FOR DAMAGES

17.     Before the beginning of the 2014-2015 school year, H.W.'s speech therapist advised LUSD that H.W. had speech delays and would require services. School personnel at Altamont were provided with information regarding H.W.'s disability and the appropriate methods of responding to the disability.

18.     H.W. was bullied, physically, and sexually abused by another student, and he and his parents feared for his safety on the Altamont school campus. Altamont officials were independently aware of and made aware of the abuse by H.W.'s parents and others, but did nothing to prevent it and failed to report injuries to H.W.'s parents.

19.     Attacks by classmate A.S. began almost immediately upon the start of school, and the first attack that was reported by H.W. occurred on or about September 17, 2014 when H.W. was physically assaulted by A.S. on the playground and H.W. suffered a sizeable lump on his head.  Although the injury was allegedly treated with ice by the teacher, no report was made to H.W.'s parents and they had to inquire how their child was injured.  In an email dated September 18, 2014, H.W.'s teacher, HAUN, was advised H.W. was "genuinely scared" of the child that assaulted him; HAUN admits in her email response she was well aware of the identity of the attacker.

20.     At this same approximate time, H.W. began on a daily basis expressing significant fears about returning to school and appeared home each day after school with urine in his pants; he conveyed he was too scared to use the restroom.  Shortly thereafter, H.W. stopped eating his lunch at school.  It was later learned this was due to A.S. vandalizing H.W.'s lunch box and throwing it over the school fence.  H.W. reported A.S. spit on him during class and was verbally routinely abusive.  Previous to this, in or about late August or early September 2014, H.W. began waking up repeatedly at night, frightened, talking and crying about "the bad guy."  This was completely out of character.  Prior to these events at Altamont, H.W. routinely slept the entire night undisturbed.  Also at about this same time, H.W. became visibly scared or anxious during the before-school line-up at Altamont.  Both ADRIANNA WORMUTH and SCOTT WORMUTH observed A.S. taunting H.W.  A.S.'s conduct and H.W.'s fear of him were observed and noted by many, including HAUN.

21.     On or about October 1, 2014, H.W.'s pants were visibly disturbed when he arrived home after school and he mentioned another student in the school restroom with him.  H.W.'s report of someone in the bathroom with him was reported that same day to HAUN.  At the same approximate time, it was learned that the parents of another classmate had also been told by their child that another student was watching her in the bathroom.  More specifically, a classmate's mother advised ADRIANNA WORMUTH that her daughter, G.W., who had also been coming home with urine in her underwear, had confided she didn't want to use the restroom because A.S. liked to come in there and watch her.  G.W.'s mother also immediately advised HAUN in writing about this situation.  On or about October 2, 2014, H.W.'s parents emailed HAUN to report this and voice additional concerns.

22.     Additionally, it was learned yet another student was attacked by A.S. and A.S. was suspended for two days.  More specifically, on or about October 2, 2014, another minor child, L.M., was sexually attacked by A.S. in the restroom.  L.M. was screaming for help as HAUN was attending to children returning from recess.  L.M. had been one of the first students to enter the classroom from recess, and she had asked HAUN if she could use the restroom.  A.S. had been just a few students behind L.M.  When HAUN heard L.M. screaming, she elected to continue to shepherd the remaining students into the classroom instead of rushing to L.M.'s aid.  Once all the students were in the classroom, HAUN found A.S. attacking L.M. sexually, grabbing her, trying to remove her skirt and underwear.  Based on information and belief, L.M.'s mother was not immediately notified by HAUN or anyone else at Altamont.  Indeed, L.M. was forced to remain in the classroom until the end of school—over an hour—before the mother arrived to pick her up; that is the first L.M.'s mother heard of the attack.  This entire sequence of events was memorialized in a text message to ADRIANNA WORMUTH by HAUN.

23.     On or about October 3, 2014, H.W. reported his fears to the school speech therapist, IBBS.

24.     Despite having received no response to their request for a meeting with HAUN and YEAGER, on or about October 3, 2014, H.W.'s parents presented themselves at YEAGER's office demanding YEAGER take action.  YEAGER offered platitudes about "doing everything he

could" to make H.W. safe; his only suggestion was to uproot H.W. and move him out of HAUN's class.

25.     On or about October 5, 2014, HAUN told ADRIANNA WORMUTH and SCOTT WORMUTH that YEAGER had told her A.S.'s mother and the Assistant District Superintendent, GILL, were friends and that GILL was going to "take care of" the matter.  On information and belief, GILL and A.S.'s family attend the same Sikh temple and GILL and A.S.'s mother are Facebook "friends."

26.     Also on or about October 5, 2014,  H.W. confided A.S. had inappropriately touched him on his buttocks while in the bathroom; the parents immediately reported this to HAUN and YEAGER.

27.     On or about October 6, 2014, H.W.'s parents were advised "the plan" devised by YEAGER and A.S.'s family was for A.S.'s mother to accompany the A.S. to school for six (6) weeks.  However, "the plan" failed to take into account A.S.'s mother's inability and/or unwillingness to attempt to control her child.  In a series of text messages, HAUN had previously reported disturbing conduct by A.S.'s mother in which A.S.'s mother lied about receiving emails from HAUN regarding A.S.'s behavior including when confronted by hard copies of those emails (then A.S.'s mother claimed her email had been "hacked").  A.S.'s mother had thereafter refused to provide a valid email address.  Additionally, HAUN told ADRIANNA WORMUTH and SCOTT WORMUTH that A.S. did not have any consequences at home, is not disciplined, and that in their "culture" men do not say they are sorry and they do absolutely no wrong.  Indeed, when asked what had been done at home to discipline A.S. for physically assaulting H.W., HAUN reported to  ADRIANNA WORMUTH and SCOTT WORMUTH that A.S.'s mother had replied, "Nothing, we took him out for ice cream."  Thus "the plan" was clearly no plan at all and was nothing more than a thin façade—a pretext concocted to pacify ADRIANNA WORMUTH and SCOTT WORMUTH.  A.S.'s mother had made it abundantly clear she did not believe A.S. had done anything wrong and had no intention of curbing A.S.'s predatory and damaging behavior.

28.     On October 7, 2014, both H.W. and classmate L.M. were visibly terrified of A.S. during morning line-up and, thus, both their parents removed them from class and advised HAUN neither child would return until A.S. was removed from the classroom.

29.     Upon removing H.W. from class on October 7, 2014, ADRIANNA WORMUTH and SCOTT WORMUTH proceeded immediately to the district superintendent's office and requested to see NICHOLAS.  Despite the receptionist trying to fob them off with an appointment and claiming he was not in, ADRIANNA WORMUTH and SCOTT WORMUTH had seen NICHOLAS outside the office and so advised they "would wait."  When NICHOLAS appeared, ADRIANNA WORMUTH and SCOTT WORMUTH advised NICHOLAS of the sequence of events set forth above; NICHOLAS claimed to be completely unaware of the situation but would investigate.  NICHOLAS was also advised of the conflict of interest between the assistant superintendent (GILL) and A.S.'s family and asked that GILL not be involved.  Based on information and belief, this request was not honored.

30.     On or about October 8, 2014, as a result of A.S.'s recurring attacks, H.W. was diagnosed with post-traumatic stress disorder (PTSD) by his family physician and referred to a child psychologist for counseling; ADRIANNA WORMUTH and SCOTT WORMUTH were cautioned to not press him for further information as this could potentially traumatize him additionally.  Later that same day, ADRIANNA WORMUTH and SCOTT WORMUTH were advised via a voicemail that A.S. was no longer in H.W.'s class.   In an email to all parents, HAUN assured everyone A.S. was no longer in class, nor in the school, and would "not be back." However, less than one month later, A.S. was allowed by LUSD personnel to return to Altamont to attend a science fair and again in December 2014 for the winter festival.  The traumatized former classmates, including H.W., were terrified and ADRIANNA WORMUTH and SCOTT WORMUTH, upon learning of A.S.'s presence, were forced to either leave or not attend at all.

31.     The IEP evaluation process began on or about September 11, 2014 with a meeting between YEAGER, HAUN, IBBS, ADRIANNA WORMUTH, and SCOTT WORMUTH.  During the lengthy meeting, despite knowledge by LUSD personnel, no mention was made of the on-going attacks on and abuse of H.W. by A.S.  Instead, ADRIANNA WORMUTH and SCOTT

1   WORMUTH were only told there were concerns about H.W.'s speech and LUSD wanted to

2   conduct an IEP evaluation to determine if H.W. qualified for speech therapy through special

3   education.  Although unaware of the attacks by A.S., ADRIANNA WORMUTH and SCOTT

4   WORMUTH both commented about how afraid H.W. had been at school.

5          32.    H.W. was tested for the next several weeks by IBBS during school days.  During

6   the course of the IEP testing, HAUN told Adrianna WORMUTH that IBBS asked HAUN to give a

7   "yes" or "no" answer as to the question whether H.W. had shown any signs of autism in front of

8   HAUN.  HAUN said she was uncomfortable answering that question because of what H.W. had

9   experienced in the classroom at A.S.'s hands since the beginning of the school year.  HAUN

10  begged Adrianna WORMUTH, "I hope you don't hate me after th[e] [second] meeting."

11         33.    The second IEP-related meeting was held on or about October 21, 2014 and was

12  attended by IBBS, HAUN, YEAGER, ADRIANNA WORMUTH, and H.W.'s grandmother.  It

13  was the conclusion of LUSD personnel that H.W. suffered from speech delays and was eligible for

14  IEP.  ADRIANNA WORMUTH stated she believed some conclusions were skewed by the trauma

15  and abuse H.W. had been experiencing as set forth herein.  ADRIANNA WORMUTH and

16  SCOTT WORMUTH thereafter submitted a lengthy rebuttal to the IEP results.

17         34.    LUSD allowed a known predator to remain in the classroom, repeatedly preying on

18  H.W., including without limitation because of his disability.  HAUN's efforts, such as they were,

19  to safeguard H.W. and the other students were to no avail and she was told to "be quiet."

20  YEAGER failed and refused to act in a timely manner, thereby continuing to place H.W. and the

21  other students in harm's way.  IBBS was on notice of A.S.'s abuse of H.W. and failed to

22  appropriately report as mandated.  GILL had a blatant conflict of interest in her personal

23  relationship with A.S.'s family and should in no way have been allegedly attempting to deal with

24  this situation.  NICHOLAS and GILL also failed to safeguard H.W., failed to act, and failed to

25  report A.S.'s abuse of H.W.

26         35.    Based on information and belief, HAUN, YEAGER, IBBS, GILL, and NICHOLAS

27  was each aware during all pertinent times that H.W. was being subjected to abuse on the basis of

28  his disability and failed to act, causing H.W. to be subjected to additional abuse.

36.      LUSD has a duty to protect a safe environment for the students.  LUSD has a duty to supervise the conduct of students in the classroom, restroom, and playground and to exercise ordinary care to protect students for the predatory types of attacks described above.  LUSD gained virtually immediate actual and constructive notice that A.S. had behavioral problems and was involved in physical, verbal, emotional, and sexual attacks as described herein.  LUSD was negligent and careless in failing to adequately supervise A.S. and thereby allow the attacks to continue for weeks.

37.      Despite the reports and concerns about bullying and H.W.'s safety while on campus, Altamont employees, including YEAGER and HAUN, continued to allow A.S. in the classroom unaccompanied and unsupervised, during which A.S. continued to abuse H.W. and other children.

38.      Following receipt of the Government Tort Claim in December 2015, YEAGER too H.W. aside and asked him to draw pictures of himself naked at school.  H.W.'s parents were not notified of YEAGER's intent to conduct such an interrogation, nor did they authorize same.

### FIRST CLAIM FOR RELIEF:
### <u>Violation of Constitutional Rights, 42 U.S.C. 1983, H.W.  vs. YEAGER, IBBS, HAUN, NICHOLAS, GILL, and DOES 1-10</u>

39.      Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

40.      YEAGER, IBBS, HAUN, NICHOLAS and GILL (INDIVIDUAL DEFENDANTS) personally participated in the deprivation of constitutional rights of H.W. by their failure to act in response to notifications of bullying and harassment on the campus of Altamont.

### A.  Actions Under Color of Law

41.      Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

42.      Persons acting under color of law are subject to suit under Section 1983. INDIVIDUAL DEFENDANTS, acting under the color of state law, intentionally discriminated

against H.W. as a member of an identifiable class (student with disabilities) by knowingly failing to address the severe abuse he experienced on the campus of Altamont that was based on disability.

43.     INDIVIDUAL DEFENDANTS violated H.W.'s rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including, but not limited to, depriving him of equal protection under the law on the basis of disability.

44.     INDIVIDUAL DEFENDANTS acted with deliberate indifference in responding to the complaints of sexual and physical abuse on the Altamont campus, and repeatedly exposed H.W. to the risk of abuse, harassment, and ultimately, sexual attacks that left him with severe psychological injuries, which further compounded his pre-existing speech delay diagnoses.

45.     As a proximate result of the violations alleged herein above, Plaintiff H.W. has suffered damages as alleged heretofore.

**SECOND CLAIM FOR RELIEF:**
**Discrimination in Violation of the Americans with Disabilities Act; H.W. vs. LUSD and DOES 11-20**

46.     Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

47.     Effective January 26, 1992, Plaintiff H.W. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. It prohibits discrimination by any "public entity", including any state or local government, as defined by 42 U.S.C. § 12131, Section 201 of the ADA.

48.     Pursuant to 42 U.S.C. § 12132, section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.  H.W. was at all times relevant herein a qualified individual with a disability as therein defined. His disabilities substantially limit at least two major life activities – speech and language.

-10-
AMENDED COMPLAINT FOR DAMAGES

49.     LUSD has failed in its responsibilities under Title II to provide its services, programs, and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability.

50.     LUSD has further failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting H.W. to a hostile educational environment.

51.     As a result of the District's failure to comply with its duty under Title II, Plaintiff H.W. has suffered special and general damages according to proof.

**THIRD CLAIM FOR RELIEF:**
**Violation of § 504 of the Rehabilitation Act of 1973; Plaintiff H.W. vs. LUSD and DOES 21-30**

52.     Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

53.     Plaintiff H.W. is informed and believes, and on that basis alleges, that LUSD is and at all relevant times was a recipient of federal funds, and that part of those funds were used in the operations, construction and/or maintenance of the specific public facilities and programs described herein and the activities that take place therein.

54.     By their actions or inactions in denying equal access to educational services and by subjecting Plaintiff H.W. to a hostile educational environment, the District violated H.W.'s rights under §504 of the Rehabilitation Act of 1973 and the regulations promulgated thereunder.

55.     As a result of LUSD's failure to comply with its duty under §504 of the Rehabilitation Act of 1973, H.W. has suffered special and general damages according to proof.

**FOURTH CLAIM FOR RELIEF:**
**Negligence: All Plaintiffs vs. All Defendants.**

56.     Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

AMENDED COMPLAINT FOR DAMAGES

57.   LUSD is vicariously liable for injuries proximately caused by negligence of school personnel responsible for student supervision. Cal.Gov. Code § 815.2(a).

58.   LUSD has a duty to supervise students on the premises of Altamont. Cal. Ed. Code § 44807.  The standard of care imposed upon school personnel in carrying out duty to supervise is identical to that required in the performance of their other duties, i.e. that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances; either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision. *Hoff v. Vacaville Unified School Dist.,* 19 Cal.4th 925 (1998).

59.   YEAGER, HAHN, IBBS, NICHOLAS, and GILL (INDIVIDUAL DEFENDANTS) are responsible for student supervision.  They had a duty of care toward H.W. and all other students to prevent the bullying and harassment occurring on the premises of Altamont.  INDIVIDUAL DEFENDANTS breached their duty of care by failing to supervise the conduct of students, giving rise to vicarious liability of LUSD.

60.   The breach of duty by the Defendants to supervise students like H.W. and A.S. caused H.W. serious physical and psychological injuries.  He has and is undergoing mental health counseling and treatment to deal with the trauma, which has compounded his pre-existing diagnoses.

61.   As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged heretofore.

**FIFTH CLAIM FOR RELIEF:**
**Violation of Unruh Civil Rights Act, Civil Code Section 51 *et seq.*;**
**H.W. vs. All Defendants**

62.   Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

63.   The Unruh Civil Act provides that all persons are entitled to full and equal services in all business establishments no matter their disability, and that no business

1  establishment shall discriminate against a person based on disability.  Civil Code section 51,
2  et seq.

3          64.     A school is a "business establishment" for purposes of the Unruh Act.

4          65.     H.W. was bullied, harassed, and attacked because of his disabilities. This was
5  known to school and district officials as both H.W. and his parents notified them about their
6  concerns about bullying and H.W.'s safety. Defendants failed to intervene to stop the
7  harassment and prevent the assaults and batteries upon H.W. by A.S. Moreover, they were
8  deliberately indifferent to the risk that this would happen by failing to supervise A.S. and
9  allowing A.S. to follow H.W. and other students into the bathroom unaccompanied.

10         66.     H.W., due to his disabilities, was deprived of advantages, privileges and
11  services of Altamont because of bullying and harassment by A.S. LUSD and INDIVIDUAL
12  DEFENDANTS were aware of this because H.W. and his parents notified the school and
13  LUSD administrators of the bullying and harassment, and that they were concerned about
14  H.W.'s safety on campus.

15         67.     Defendants intentionally discriminated against H.W. based on his disability.

16                          **SIXTH CLAIM FOR RELIEF:**

17     **Intentional Infliction of Emotional Distress; All Plaintiffs vs. All Defendants**

18         68.     Plaintiffs refer to, and incorporate herein by reference, all of the preceding
19  paragraphs as though fully set forth herein.

20         69.     The actions of Defendants as alleged herein were outrageous, malicious, and
21  intended to and did inflict emotional distress and humiliation upon Plaintiffs.

22         70.     Defendants' conduct, as set forth above, was intentional and outrageous.
23  LUSD is vicariously liable for the acts of its employees under Cal. Govt. Code § 815.2.

24         71.     As a proximate result of Defendants' intentional acts, Plaintiffs have incurred
25  damages as alleged heretofore.

26  //
27  //
28  //

AMENDED COMPLAINT FOR DAMAGES

**SEVENTH CLAIM FOR RELIEF:**

**<u>Violation of Educational Code Section 220; H.W. vs. All Defendants</u>**

72.     Plaintiffs refer to, and incorporate herein by reference, all of the preceding paragraphs as though fully set forth herein.

73.     Section 220 of the Education Code provides: "[n]o person shall be subjected to discrimination on the basis of disability….in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."

74.     H.W. was subjected to severe and pervasive bullying, harassment, and assault.

75.     The conduct of A.S. denied H.W. the right to equal access to the educational benefits and opportunities.

76.     All defendants had actual knowledge that H.W. was bullied and harassed because of his disabilities.  H.W. and his parents and staff informed LUSD that H.W. was subjected to severe bullying and harassment, but LUSD was deliberately indifferent when it took no actions to prevent it, and continued the practice of allowing A.S. to be unsupervised, including without limitation in the bathroom when other students, including H.W., were present.

**<u>JURY DEMAND</u>**

77.     Plaintiffs hereby demand that this matter be tried to a jury.

**<u>PRAYER</u>**

WHEREFORE, Plaintiffs prays for judgment as follows:

1.    Compensatory damages to Plaintiffs for injury, emotional distress and for medical expenses;

2.  Punitive damages against INDIVIDUAL DEFENDANTS;

3.  Attorney's fees and costs; and

//

//

AMENDED COMPLAINT FOR DAMAGES

1     4.  Such other and further relief as the court deems just and proper.

2

3  DATED: 12/16/2015             **KRAEBER LAW OFFICE**

4

5  _____/s/ *Rhonda Kraeber*_____

6  RHONDA D. KRAEBER
   Attorneys for Plaintiffs

7

8  DATED: 12/16/2015             **LAW OFFICES OF TODD BOLEY**

9

10  _____/s/ *Zoya Yarnykh*_____

11  ZOYA YARNYKH
   Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-
AMENDED COMPLAINT FOR DAMAGES