1   PETER W. ALFERT, SBN 83139
    IAN A. HANSEN, SBN 255449
2   LAW OFFICES OF PETER ALFERT
    A Professional Corporation
3   200 Pringle Ave., Suite 450
    Walnut Creek, California  94596
4   Telephone: (925) 279-3009
    Facsimile:  (925) 279-3342
5
    TODD BOLEY, SBN 68119
6   ZOYA YARNYKH, SBN 258062
    2381 Mariner Square, Suite 280
7   Alameda, CA  94501
    Telephone: (510) 836-4500
8   Facsimile: (510) 649-5170

9   RHONDA D. KRAEBER, SBN 154665
    KRAEBER LAW OFFICE
10  1191 Central Blvd., STE C
    Brentwood, CA 94513
11  Telephone: (925) 513-1264
    Facsimile: (925) 392-0433
12
13  Attorneys for PLAINTIFFS

14              UNITED STATES DISTRICT COURT

15            EASTERN DISTRICT OF CALIFORNIA

16  ADRIANNA WORMUTH, SCOTT          Case No. 2:15-CV-01572-KJM-EFB
    WORMUTH and H.W., a minor, by and through
17  his guardians ad litem ADRIANNA
    WORMUTH and SCOTT WORMUTH,       **PLAINTIFFS' MEMORANDUM OF**
18                                   **POINTS AND AUTHORITIES IN**
                                     **SUPPORT OF OPPOSITION TO**
19              Plaintiffs,          **DEFENDANTS' MOTION FOR**
                                     **SUMMARY JUDGMENT**
20          v.
                                     DATE:  August 25, 2017
21  LAMMERSVILLE UNION SCHOOL        TIME:  10:00 a.m.
    DISTRICT, JAMES YEAGER, DAWN IBBS,   DEPT:  Courtroom 3
22  TERESA HAUN, KIRK NICHOLAS, and
    KHUSHWINDER GILL, and DOES 1-30,     Before Hon. Kimberly J. Mueller
23
                Defendants.
24
25
26
27
28

_____
PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS              2:15-cv-01572-KJM-EFB
MOTION FOR SUMMARY JUDGMENTG

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page No.:</u>

3
### CONTENTS

I.      INTRODUCTION ................................................................................................. 1

4

II.     STATEMENT OF FACTS ................................................................................... 1

5

III.    LEGAL ARGUMENT .......................................................................................... 6

6

A.    SUMMARY JUDGMENT STANDARD. .................................................. 6

7

B.    DEFENDANTS' MOTION SHOULD BE DENIED AS IT IS

8          UNTIMELY AND DEFENDANTS FAILED TO MEANINGFULLY
           MEET AND CONFER PRIOR TO THE FILING OF THE MOTION. ..... 6

9
                1.    THE MOTION SHOULD BE DENIED AS DEFENDANTS
10                    FAILED TO FILE THE MOTION WITHIN THE TIME
                       REQUIRED BY THE LOCAL RULES AND THE COURT'S
11                    SCHEDULING ORDER. ................................................................. 6

12              2.    THE MOTION SHOULD BE DENIED AS DEFENDANTS
                       FAILED TO MEANINGFULLY MEET AND CONFER PRE-
13                    FILING. ........................................................................................... 7

14      C.    YEAGER IS NOT ENTITLED TO SUMMARY JUDGMENT ON
                PLAINTIFF'S 1983 CLAIM FOR VIOLATION OF H.W.'S RIGHTS
15              UNDER THE FOURTEENTH AMENDMENT ........................................ 7

16              1.    EQUAL PROTECTION ................................................................. 9

17              2.    SUBSTANTIVE DUE PROCESS ............................................... 10

18      D.    DEFENDANT LUSD IS NOT ENTITLED TO SUMMARY
                JUDGMENT ON PLAINTIFF'S CLAIMS UNDER SECTION 504 AND
19              TITLE II OF THE ADA .......................................................................... 12

20      E.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT
                ON PLAINTIFF'S CLAIM OF NEGLIGENCE ..................................... 16

21

F.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT
22              ON PLAINTIFF'S STATE CIVIL RIGHTS CLAIMS ........................... 18

23      G.    TRIABLE ISSUES OF MATERIAL FACT REMAIN ON
                DEFENDANTS CLAIMED IMMUNITIES TO PLAINTIFF'S STATE
24              LAW CLAIMS ........................................................................................ 18

25              1.    DISCRETIONARY IMMUNITY ............................................... 18

26              2.    COVERDELL ACT ..................................................................... 20

27 IV.     CONCLUSION .................................................................................................. 20
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'                          2:15-cv-01022-KJM-EFB
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page No.:**

## CASES

*Anderson v. Solis*
   2013 WL 245232 at *6 (N.D. Cal. 2013) ........................................ 12

*Balint v. Carson City*
   180 F.3d 1047 (9th Cir. 1999) ........................................ 6

*Barner v. Leeds*
   24 Cal.4th 676 (2000).......................................................... 19

*Barrett v. Atlantic Richfield Co.*
   95 F.3d 375 (5th Cir. 1996) ........................................ 17

*C.B. v. Sonora Sch. Dist.*
   691 F. Supp. 2d 1123 (E.D. Cal. 2009) ........................................ 19

*Caldwell v. Montoya*
   10 Cal. 4th 972 (1995)........................................................... 19, 20

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ........................................ 6

*Corales v. Bennett*
   488 F.Supp.2d 975 (C.D.Cal.2007)........................................ 19

*Dailey v. Los Angeles Unified Sch. Dist.*
   2 Cal.3d 741 (1970)........................................................... 16

*Davis v. Monroe County Board of Education*
   526 U.S. 629 (1999) ........................................ 13

*Dennis v. Bd. of Educ. of Talbot Cty.*
   21 F. Supp. 3d 497 (D. Md. 2014) ........................................ 20

*DeShaney v. Winnebago County Dept. of Social Servs.*
   489 U.S. 189 (1989) ........................................ 10

*Doe v. Methacton Sch. Dist.*
   880 F. Supp. 380 (E.D. Pa. 1995) ........................................ 11

*Duvall v. County of Kitsup*
   260 F.3d 1124 (9th Cir. 2001)........................................ 13, 15

*Ellis v. Knight Transp., Inc.*
   2012 WL 6554382 at *2 (E.D. Cal. 2012)........................................ 7

*Engert v. Stanislaus Cty.*
   No. 1:13-CV-00126 LJO, 2015 WL 3609315, at *26 (E.D. Cal. June 8, 2015)................. 19

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS                2:15-cv-01572-KJM-EFB
MOTION FOR SUMMARY JUDGMENT

*Enright v. Springfield Sch. Dit.*
    2007 WL 4570970, at *6 (E.D. Pa. 2007) ........................................................ 12

*F.D.I.C. v. Jackson*
    133 F.3d 694 (9th Cir. 1998)........................................................................... 20

*Faurie v. Berkeley Unified Sch. Dist.*
    No. C 08-0060 TEH, 2008 WL 820682, at *13 (N.D. Cal. Mar. 26, 2008) ........................ 19

*Flores v. Morgan Hill Unified Sch. Dist.*
    324 F.3d 1130 (9th Cir. 2003)...................................................................... 9, 10

*Garedakis v. Brentwood School District*
    183 F.Supp.3d 1032 (N.D. Cal. 2016)................................................................ 14

*Henry A. v. Willden*
    678 F.3d 991 (9th Cir. 2012)........................................................................ 11

*Hoyem v. Manhattan Beach City Sch. Dist.*
    22 Cal.3d 508 (1978)................................................................................ 16

*Hunt v. Cromartie*
    526 U.S. 541 (1999) ................................................................................ 13

*IDC v. City of Vallejo*
    No. 2:13-cv-1987 DAD, 2013 U.S. Dist. LEXIS 177858, at *12 (E.D. Cal. Dec. 17, 2013).
    .................................................................................................... 18

*Ierardi v. Lorillard, Inc.*
    Civil Action No. 90-7049, 1991 U.S. Dist. LEXIS 11320, at *8 (E.D. Pa. Aug. 5, 1991) .. 17

*J & J Sports Prods., Inc. v. Bath*
    2013 WL 5954892 at *9 (E.D. Cal. 2013)............................................................. 7

*J.E.L. v. San Francisco Unified Sch. Dist.*
    185 F. Supp. 3d 1196 (N.D. Cal. 2016) ............................................................ 19

*J.H. v. Los Angeles Unified Sch. Dist.*
    183 Cal. App. 4th 123.............................................................................. 16

*Johnson v. City of Shelby*
    135 S. Ct. 346 (2014)........................................................................... 8, 19

*Kennedy v. City of Ridgefield*
    439 F.3d 1055 (9th Cir. 2006)...................................................................... 11

*Kuyper v. Bd. of Cty. Commissioners of Weld Cty., Colo.*
    2010 WL 1287534, at *6 (D. Colo., 2010) .......................................................... 11

*L.W. v. Grubbs*
    974 F.2d 119 (9th Cir. 1992)....................................................................... 10

*Lawrence v. City & Cty. of S.F.*
    No. 14-cv-00820-MEJ, 2017 U.S. Dist. LEXIS 92499, at *18 (N.D. Cal. June 15, 2017).... 8

*Lucas v. Fresno Unified School Dist.*
    14 Cal.App.4th 866 (1993) ................................................................. 16

*M. W. v. Panama Buena Vista Union Sch. Dist.*
    110 Cal. App. 4th 508 (2003) ........................................................... 16

*M.L. v. Fed. Way Sch. Dist.*
    394 F.3d 634 (9th Cir. 2004) ........................................................... 13

*Mark. H v. Lemahieu*
    513 F.3d 922 (2008) ........................................................................ 13

*Massey v. Banning Unified Sch. Dist.*
    256 F. Supp. 2d 1090 (C.D. Cal. 2003) ........................................... 19

*Mayan v. Chemetron Invs., Inc.*, Civil No. 4-97-cv-30543, 2000 U.S. Dist. LEXIS 21640, at *18
    (S.D. Iowa June 19, 2000). ................................................................ 8

*McCaugherty v. Siffermann*
    132 F.R.D. 234 (N.D. Cal. 1990) ...................................................... 8

*Moses v. Providence Hosp. & Med. Ctrs., Inc.*
    561 F.3d 573 (6th Cir. 2009) ............................................................. 6

*Nabozny v. Podlesny*
    92 F.3d 446 (7th Cir. 1996) ............................................................ 10

*Nicole M. v. Martinez Unified Sch. Dist.*
    964 F. Supp. 1369 (N.D. Cal. 1997)........................................... 10, 19

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*
    210 F.3d 1099 (9th Cir. 2000)........................................................... 6

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*
    34 Cal. 4th 441 (2004) .................................................................... 18

*T.E. v. Grindle*
    599 F.3d 583 (7th Cir. 2010) ........................................................... 11

*T.K. v. N.Y.C. Dep't of Educ.*
    779 F. Supp. 2d 289 (E.D.N.Y. 2011) ............................................ 14

*United States v. City of Tacoma*
    332 F.3d 574 (9th Cir. 2003) ............................................................. 6

*V.S. by & through Sisneros v. Oakland Unified Sch. Dist.*
    2015 WL 3463475, at *4 (N.D. Cal., 2015) .................................... 11

*Vance v. Spencer Cty. Pub. Sch. Dist.*
    231 F.3d 253 (6th Cir. 2000)........................................................... 12

*Vernonia Sch. Dist. 47J v. Acton*
    515 U.S. 646 (1995) ....................................................................... 10

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY JUDGMENT

2:15-cv-01572-KJM-EFB

*Vinson v. Thomas*
        288 F.3d 1145 (9th Cir. 2002)............................................................................. 13

*Visnovits v. White Pine Cty. Sch. Dist.*
        No. 3:14-CV-00182LRH-VPC, 2015 U.S. Dist. LEXIS 52248, at *8 (D. Nev. Apr. 21,
        2015)............................................................................................................... 13


# REGULATIONS

29 U.S.C. § 794(b)(2)(B)................................................................................... 13

29 U.S.C. §701................................................................................................. 12

34 C.F.R. § 104.33(a)....................................................................................... 14

Coverdell Act, 20 U.S.C. §§ 7941 *et seq.* .......................................................... 20

Rehabilitation Act of 1973, Section 504 ............................................. 12, 13, 14, 15, 20


# RULES

Fed. Rule Civ. Proc. 56 ....................................................................................... 6


# OTHER AUTHORITIES

Education Code § 220 ........................................................................................ 20

Education Code § 44807 .................................................................................... 16

Education Code §§ 32261 and 44807 .................................................................. 20

Government Code § 820.2................................................................................ 18,19

Penal Code §§ 11166(a) and (i)(1)....................................................................... 20

1

## I.   INTRODUCTION

Immediately after student A.S. began at Altamont Elementary School ("Altamont") in the Lammersville Union School District ("LUSD"), Defendants became aware that A.S. was physically assaulting and sexually abusing his pre-kindergarten classmates but they failed to take reasonable steps to protect speech-delayed five-year-old Plaintiff H.W.  Though they were aware of multiple incidents of A.S. bullying, assaulting and displaying sexualized conduct toward H.W., Defendants withheld appropriate interventions from A.S. and concealed the abuse from H.W.'s parents Adrianna and Scott Wormuth, When his parents expressed concern about H.W.'s troubling behavioral changes to the Principal and teacher, they were told that nothing at school accounted for the behavioral changes. Both principal and teacher concealed their knowledge of the abuse of H.W. by A.S. These affirmative acts prevented H.W.'s parents from being able to protect H.W. and remove him from school.  Principal James Yeager ("Yeager") refused requests by A.S.'s teacher for additional staff to supervise and stop A.S. from abusing his classmates, and refused multiple requests by A.S.'s parents to move A.S. to a different classroom.  The evidence establishes triable issues of fact exist with respect to all of Plaintiffs' claims and Defendants' Motion should be denied.

## II.   STATEMENT OF FACTS

H.W. began TK (hereinafter "TK") at Altamont in the LUSD August 20, 2014 at age five and this was his first school experience. H.W. had experienced no difficulties with behavioral issues prior to his attendance at the school. (Adrianna Wormuth Decl. (hereinafter "AW Dec."), ¶ 1-7.)  Teresa Haun (hereinafter "Haun") was the afternoon TK teacher (AW Dec., ¶ 9.) hired nine days before the start of school. (**Ex. A** to Decl. of Ian Hansen (hereinafter "IH Dec."), LJUSD_POD(1) 00494.) Haun's TK class consisted of approximately 15 to 24 children including Plaintiff H.W. and A.S.  (**Ex. B** to IH Dec., Haun Depo, Vol.1 at 64:10.)

During their time together in TK, A.S. systematically abused and bullied H.W. A.S. spit on and hit H.W. multiple times, made fun of H.W.'s teeth, pushed H.W. off of a play structure on the playground then kicked him in the head, threw his lunch and lunchbox over the fence, verbally abused him, and followed him into the bathroom and touched him on the butt while he was using

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS                    2:15-cv-01572-KJM-EFB
MOTION FOR SUMMARY JUDGMENT

the bathroom. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 64:19-22; 70:18-21; 73:15-16; 74:3-9; 94:21-24; **Ex. C** to IH Dec., Yeager Depo Vol.1 at 92:20-24)   Although A.S. also physically abused and injured other children in the classroom and touched them inappropriately, H.W. was his primary target for abuse.  (**Ex. B** to IH Dec., Haun Depo Vol.1 at 64:11-18.)  Haun observed that because of the abuse, H.W. had become "scared to come to school and scared to be anywhere near A.S." (**Ex. B** to IH Dec., Haun Depo Vol.1 at 76:11-12.)

Haun witnessed A.S.'s behavior toward H.W. "within the first week" of school. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 26:9-14.)  Haun so concerned by her observations that she orally reported the abuse to the Yeager the first week of school. (**Ex. E** to IH Dec., Haun Depo Vol.2 at 169:16-20; 169:25-170:2.)  Over the next weeks Haun repeatedly notified Yeager in writing that A.S.'s behavior was "crazy" and "violent."  (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 5.)

Haun felt she could not adequately supervise the classroom by herself because of A.S.'s behaviors. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 92:24-93:8, 72:25-73:6, **Ex. E** to IH Dec., Haun Depo Vol.2 at 170:6-171:6.) Haun reported to Yeager that Pre-K teacher Blaire Armaz, assigned to act as a classroom aide, was never present.  Haun requested Yeager provide additional staff to assist her, "…at most points even yelling and demanding why she still hasn't been in my class to help and he never came in. She was never there." (**Ex. B** to IH Dec., Haun Depo Vol.1 at 72:25-73:6.)  In Haun's opinion, Yeager did not handle the bullying issue appropriately and did not provide her with the requested support (**Ex. E** to IH Dec., Haun Depo Vol.2 at 170:6-17.)  Yeager denied Haun's request for additional support promising to personally spend time in the class and at drop-off and pick-up to help.  (**Ex. E** to IH Dec., Haun Depo Vol.2 at 170:6-17.) Yeager failed to follow through with this promise or offer Haun any constructive advice on how to protect H.W. from abuse. (**Ex. E** to IH Dec., Haun Depo Vol.2 at 170:6-17.) Yeager only instructed Haun to "observe and monitor" A.S. for a month and "document" any instances of abuse she witnessed. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 65:22-66:15.)

On Aug. 26, 2014, Haun informed Yeager by email that A.S. and H.W. both needed to be assessed for special education services. Yeager responded he did not want to "rush" to assessment. (**Ex. D** to IH Dec., Yeager Depo. Ex. 2 at p. 1.)  Haun had concerns that H.W. could be "on the

spectrum." (**Ex. K** to IH Dec., LJUSD 01299.) Yeager later agreed to allow assessment of H.W., referring to him as an "exceptional case" as H.W. had been recommended for services previously. (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 3.)   On Thursday, Sept. 11, 2014, a Student Study Team ("SST") was convened for H.W. which included Haun, Yeager and H.W.'s parents.  At the meeting, H.W.'s parents described significant behavioral changes observed at home, including tantrums, uncontrollable crying, bed wetting, sleep disturbance, generalized fear and resistance to go to school.  (**EX. O** to IH Dec., Adrianna Wormuth Depo at 19:12-19; 25:7-14.) H.W.'s parents were unaware of the cause of these behavioral changes and asked if anything at school could be contributing to the behavior. (AW Dec. ¶ 26 & 27; **EX. O** to IH Dec., Adrianna Wormuth Depo at 19:12-19; 25:7-14.) Yeager and Haun concealed the ongoing abuse of H.W. and misrepresented that they knew of nothing at school that could be contributing to H.W.'s behaviors. Had Yeager disclosed the abuse H.W. was suffering in school, the Wormuths would have protected H.W. by removing him from school. (AW Dec. ¶ 26 & 27).

   On Friday, Sept. 12, 2014, Haun informed Yeager via email that A.S. had spit on students during the week, had tried to cut G.W.'s hair (a female student), and was "always" hitting and kicking kids.  Haun reported that her behavior management system was "not working." (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 5.)   On Sept.17, 2014, A.S. pushed H.W. off the playground structure and kicked him in the head. (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 7.) Haun witnessed the incident and notified Yeager of the assault, but failed to notify H.W.'s parents.  (**Ex. B** to IH Dec., Haun Depo Vol. I at 94:20-95:19; **Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 7.) When H.W. came home that day, he was crying and had a golf ball sized bruise on his head. (AW Dec. at ¶ 8.) H.W. did not tell his mother how he had been injured. (AW Dec. at ¶ 8.)

   H.W.'s behavior progressively worsened, he began refusing age-appropriate foods he used to enjoy and regressed to toddler eating habits including eating baby food.  H.W.'s parents noticed urine in his underwear when he returned from school and when asked, H.W. said he was scared to go to the bathroom. (AW Dec. at ¶ 17-20.)

   Yeager took no steps to address A.S.'s bullying of H.W.  (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 7.)  Despite acknowledging to Haun they needed to "start addressing [A.S.'s

3

bullying] in an aggressive fashion," he did nothing more than meet with A.S.'s parents. (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 7.)  Worse, he affirmatively denied A.S.'s parents' request that he be moved from the classroom, thus further exposing H.W. to further bullying. On Sept. 18, 2014, A.S.'s parents emailed Yeager expressing concern that they had not been informed about A.S.'s ongoing behavior issues earlier.  (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at pp. 10-14.)  On Sept. 24, 2014, The Singhs requested A.S. be removed from Haun's classroom.  (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 15.) Yeager denied this request.  (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 17.)

Haun was a mandated reporter with reasonable suspicion that A.S. had been abused due to the frequency and severity of his conduct. (**Ex. B** to IH Dec., Haun Depo Vol. I at 136:21-24.)  By the Sept. 24 meeting, Haun was "convinced" that A.S. was being abused by at least one of his parents. (**Ex. B** to IH Dec., Haun Depo Vol. I at 136:23-24.)  When Haun told Yeager of her belief that A.S. was a victim of child abuse and that she thought a report to CPS was warranted, she was told by Yeager that this was "not a CPS issue because of the different culture" and was told "in no uncertain terms" not to report.  (**Ex. B** to IH Dec., Haun Depo Vol. I at 137:20-24.)  As a result of her Principal's instruction, Haun did not report her reasonable suspicion that A.S. was a victim of child abuse until Oct. 8, 2014, when Haun received explicit approval from the superintendent. (**Ex. B** to IH Dec., Haun Depo Vol. I 137:17-24.)  Haun and Yeager met with A.S. and his parents on Sept. 26, 2014 to discuss concerns regarding A.S.' behaviors. (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 18.)  On Sept. 28, 2014, Mr. Singh again asked that A.S. be moved to a different class. Yeager denied the request on Sept. 29, 2014.  (**Ex. D** to IH Dec., Yeager Depo Vol. II; Ex. 2 at p. 15.)

On Sept. 30, 2014, A.S. took H.W.'s lunch throwing it over the fence to the street and pushed another boy down the stairs injuring him. (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 24.)  By now, A.S.'s behaviors had had infected the entire classroom, creating what Yeager admitted was a hostile educational environment. (**Ex. J** to IH Dec., Yeager Depo Vol.2 at 209:12-17). Haun testified that 60-80% of the class complained that A.S. would follow them in to the bathroom and watch them while they used the bathroom.  (**Ex. B** to IH Dec., Haun Depo Vol.1 70:18-23.)  Haun

and the superintendent confirm there was no bathroom policy and Yeager told teachers he was taking no responsibility for abuse in the bathroom. (**Ex. F** to IH Dec., Nicholas Depo at 36:20-21; **Ex. B** to IH Dec., Haun Depo Vol.1 107:16-24; **Ex. G** to IH Dec., LJUSD-01462).

On Oct. 1, 2014, Haun witnessed A.S. hit and spit on a child in the classroom and hit a child at recess. (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 25.) On the morning of Oct. 2, 2014, the mother of a girl in the classroom informed Haun that A.S. had pulled the curtain and watched her daughter use the bathroom the day before. (**Ex. D** to IH Dec., Yeager Depo. Ex. 2 at p. 28.) On Oct. 2, 2014, Haun witnessed A.S. follow another female student, L.M., into the bathroom. Haun subsequently heard L.M. screaming in the bathroom and upon investigation L.M. told Haun that A.S. had been "pulling on her underwear and skirt." (**Ex. B** to IH Dec., Haun Depo. Vol.1 at 89:19-92:9.)

After the reports of assaults on female students, Yeager suspended A.S. for Oct. 3 and 6, 2014. (**Ex. D** to IH Dec., Yeager Depo. Ex. 2 at p. 36.) On Oct. 5, 2014, H.W. told his parents that A.S. touched his butt while he used the school bathroom. (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 44.) Haun knew on Sept. 30, 2014 that A.S. had touched H.W.'s butt in the bathroom. (**Ex. B** to IH Dec., Haun Depo. Vol.1 at 137:3-5.) On Oct. 8, 2014 following the abuse at school, H.W.'s pediatrician Jody Ullom, M.D. diagnosed H.W. with post-traumatic stress disorder ("PTSD") (AW Dec., ¶ 21.) H.W.'s medical record notes reflect that A.S. hit H.W., took his lunch and fondled him in the bathroom and as a result H.W. had become fearful of attending school, cried when being dropped off, and reverted to nightly bedwetting. (AW Dec., ¶ 22.) It is undisputed that H.W. continues to suffer from PTSD and has been treated by Dr. Joan Wenters for over 2.5 years. Over the course of treatment, H.W. has shown signs of fear, anxiety and terror when discussing A.S. and a generalized fear of someone hurting him and his parents being unable to protect him. [Wenters Decl., ¶ 5-7] He has developed a number of regressive behaviors as a result of the trauma, including a fear of the dark, a fear that others will harm him, a fear of eating regular food, and a fear of novel activities. (Wenters Dec., ¶ 8.) H.W. has also developed significant behavior problems including not listening or following directions, being openly defiant, uncooperative and hyperactive (Wenters Dec., ¶ 9). It is now nearly 3 years after incidents with A.S. and H.W.

5

continues to manifest symptoms of chronic PTSD of a severe nature caused by physical abuse, emotional abuse, and sexual abuse he experienced as a student at Altamont. (Delc. of Lynn Ponton, M.D., ¶ 63.)

## III.   LEGAL ARGUMENT

### A. Summary Judgment Standard.

Fed. Rule Civ. Proc. 56 authorizes the Court to grant summary judgment only where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). The court must view the evidence in the light most favorable to the non-moving party. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

### B. Defendants' Motion Should Be Denied As It Is Untimely And Defendants Failed To Meaningfully Meet And Confer Prior To The Filing Of The Motion.

#### 1.   The motion should be denied as Defendants failed to file the motion within the time required by the local rules and the Court's scheduling order.

Pursuant to the Court's pre-trial scheduling order in this case, all dispositive motions in the matter shall be heard no later than August 25, 2017. (**Ex. L** to IH Dec., ECF No. 22, p. 4). Accordingly, the last day for filing a regularly notice motion for summary judgment in this matter was July 28, 2017. *See* E.D. Local Rule 230(b). Defendants filed their motion in a piecemeal fashion which is not authorized by the federal or local rules and did not file their memorandum of points and authorities in support of the motion until July 30, 2017, *two days after it was due*. Accordingly, the motion as a whole is untimely as it was set for hearing less than 28 days after the filing of the motion. Defendants violated the dispositive motion deadline, ignoring the Court's scheduling order and the Court should deny the motion as it was intentionally improperly noticed. *See Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 584 (6th Cir. 2009) (if the required notice has not been given, the court generally lacks authority to grant the motion).

**2.     The motion should be denied as Defendants failed to meaningfully meet and confer pre-filing.**

This Court's Pretrial Scheduling Order imposes certain requirements for summary judgment motions, including a meet and confer requirement. Defendants did not comply with the Court's order requiring counsel to meaningfully meet and confer prior to the filing of a summary judgment motion as recounted in the attached declaration. (Hansen Dec. at ¶¶ 2-15.)  Numerous disputes remain which could have been resolved prior to filing, including whether certain legal theories were sufficiently raised in Plaintiff's complaint. Counsel for Defendants was aware that the meet and confer process was deficient and the notice of motion tellingly does not contain "a certification that meet and confer efforts have been exhausted" as required by the scheduling order. A moving party's disregard for the meet and confer requirement is reason enough to deny a motion for summary judgment.  *See, e.g., J & J Sports Prods., Inc. v. Bath*, 2013 WL 5954892, at *9 (E.D. Cal. 2013) (denying moving party's motion for summary judgment for, among other reasons, the moving party's failure to meet and confer); *see also Ellis v. Knight Transp., Inc.*, 2012 WL 6554382, at *2 (E.D. Cal. 2012) ("[w]hen a party files a motion for summary judgment in violation of the scheduling order's meet and confer requirements, and the non-moving party objects, the Court generally sustains the non-moving party's objection and denies the summary judgment motion. The Court does not see a good reason to deviate from its practice."). The Court should deny Defendants' summary judgment motion for failure to meet and confer prior to filing.

**C.  Yeager is not entitled to summary judgment on Plaintiff's 1983 claim for violation of H.W.'s rights under the Fourteenth Amendment.**

Plaintiff asserts that Yeager violated his constitutional rights under the Fourteenth Amendment by taking actions which increased the risk that he would be abused by A.S. Plaintiff will demonstrate a Fourteenth Amendment violation at trial under two distinct legal theories. First, Plaintiff will demonstrate that Yeager treated female victims of A.S. differently than H.W. and his disparate response to bullying therefore denied A.S.'s rights under the Fourteenth Amendment's Equal Protection clause. (**Ex. N** to IH Dec., LJUSD_POD 00426-00428; **Ex. D** to IH Dec. Ex. 2 at p. 44; **Ex. B** to IH Dec., Haun Depo. Vol.1 at 137:3-5; Schwartzberg Dec., ¶ 148-149) Second, Yeager affirmatively created a danger by misrepresenting to H.W.'s parents that nothing happening

7

at school was contributing to H.W.'s behavioral changes, concealing A.S.'s abuse of H.W., denying Haun's request for the staff and support to prevent abuse, failing to supervise A.S. himself as he promised and refusing multiple requests to remove A.S. from the class, thereby increasing the likelihood A.S. would harm H.W. in violation of H.W.'s substantive due process rights under the Fourteenth Amendment. (Adrianna Wormuth Dec. ¶ 26-27; **EX. O** to IH Dec., Adrianna Depo, 19:12-19; 25:7-14.)

Defendants failed to adequately meet and confer prior to filing this motion and therefore do not address Plaintiff's theories in the motion for summary judgment. These are not, as Defendants assert, "new claims", and the complaint was sufficient to provide notice to Defendants under the liberal pleading rules reflected in the FRCP. Plaintiffs have asserted throughout the litigation that Defendants "personally participated in the deprivation of constitutional rights of H.W. by their failure to act in response to notifications of bullying and harassment on the campus of Altamont." Amended Complaint ¶ 40. Plaintiffs also alleged a violation of the Fourteenth Amendment. *Id.* at ¶ 40. To the extent Defendants were unclear as to the legal theories underlying these contentions, Defendants had the opportunity and obligation to file contention interrogatories which Defendants failed to properly do prior to the discovery cut-off. *See McCaughterty v. Siffermann*, 132 F.R.D. 234, 249 (N.D. Cal. 1990) ("[C]ontention interrogatories are broadly defined as questions that ask an opposing party to state the facts, evidence, or legal theories upon which it bases its specified contention(s) or that ask an opponent to explain or defend his or her contention(s).").

Plaintiff was not required to state in the complaint the legal theories supporting his constitutional claims for relief. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curium). As the US Supreme has recognized, the FRCP have effectively abolished the "theory of pleadings" doctrine which formerly required a Plaintiff to succeed only on those theories pleaded in the complaint. *Id.; see also Mayan v. Chemetron Invs., Inc.*, Civil No. 4-97-cv-30543, 2000 U.S. Dist. LEXIS 21640, at *18 (S.D. Iowa June 19, 2000). Defendants' citation to *Lawrence v. City & Cty. of S.F.*, No. 14-cv-00820-MEJ, 2017 U.S. Dist. LEXIS 92499, at *18 (N.D. Cal. June 15, 2017) is inapposite as in that case plaintiffs attempted to add an entirely new claim under a different constitutional amendment in response to a motion for summary judgment.

8

Although they were aware of Plaintiff's legal theories through the truncated meet and confer process, Defendants declined to address Plaintiff's theories in their motion for summary judgment. Accordingly, the motion for summary judgment on these claims should be denied. Plaintiff will nonetheless address the legal basis for these claims below.

**1.    Equal Protection**

There is a triable issue of material fact as to whether defendant Yeager deprived H.W. of his right to equal protection of the law by discriminating against him on the basis of his gender in violation of the Fourteenth Amendment of the United State Constitution. To state a claim of this nature, Plaintiff must show that Defendant Yeager, acting under color of state law, discriminated against H.W. as a member of an identifiable class, and that such discrimination was either intentional or occasioned by deliberate indifference. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003).    The record supports the conclusion that Defendant Yeager permitted H.W. to be bullied by A.S. by failing to provide adequate classroom supervision upon notice of the bullying or otherwise take any actions to affirmatively protect H.W.  There is triable issue of fact as to whether Yeager treated the female victims of A.S. different than H.W. and therefore discriminated against H.W. based on his gender.  Yeager was aware that A.S. spit on H.W., hit H.W., made fun of H.W.'s teeth, pushed H.W. off a play structure on the playground then kicked him in the head, and verbally abused him. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 64:19-22; 70:18-21; 73:15-16; 74:3-9; 94:21-24; **Ex. C** to IH Dec. Yeager Depo Vol.1 at 92:20-24.) Haun testified that she first witnessed A.S. having issues with H.W. "within the first week" of school and she contemporaneously reported the abuse to Yeager as it occurred. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 26:9-14.; **Ex. E** to IH Dec., Haun Depo Vol.2 at 169:16-20; 169:25-170:2). Yeager did not provide Haun with any of the requested support but instead simply instructed Haun to "observe and monitor" the interactions between the children. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 65:22-66:15.) While Yeager had a few meetings with A.S.'s parents, he did nothing to affirmatively protect H.W. from further abuse. However, when Yeager learned that A.S. was also abusing female students, he immediately suspended A.S. for two days and ultimately transferred him out of the school.  (**Ex. D** to IH Dec., Yeager Depo. Ex. 2 at p. 36; **Ex. C** to IH Dec. Yeager Depo Vol.1 at

9

151:5-8; 152:7-9.) This disparate treatment raises a triable issue of material fact as to whether H.W. received different treatment because of his gender. *See Nabozny v. Podlesny*, 92 F.3d 446, 454-55 (7th Cir. 1996). In *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369 (N.D. Cal. 1997), the minor plaintiff argued that the school principal failed to take appropriate steps to prevent her harassment at the hands of another student. The court rejected the principal's argument that no intentional discrimination had been demonstrated by his inaction, stating that a decision not to take steps to remedy known harassment may constitute evidence of an intent to discriminate on the basis of sex, which in turn would violate the victim's equal protection rights. *Id.* at 1383. There is similar evidence of disparate treatment on the basis of gender in this case. The record also contains sufficient evidence to raise an inference that Yeager acted with deliberate indifference to the harassment as discussed below. *See Flores*, 324 at 1135-36 (plaintiffs must show either that the defendants intentionally discriminated or acted with deliberate indifference).

Finally, the fact that H.W. continues to have symptoms of PTSD demonstrates the extreme impact AS's abuse has had on him and supports the conclusion that A.S.'s behavior toward H.W. was sufficiently "severe, pervasive, and objectionably offensive" to deny him equal access to education. (Ponton Dec., ¶ 55, 60, 63).

## 2. Substantive Due Process

The evidence also supports a claim under the Due Process Clause of the Fourteenth Amendment. While a school district does not have a general constitutional duty to protect students from peer harassment, *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995), there is an exception where the state created or increased the danger that an individual would be exposed to harm by others. Under this so-called "state-created danger" exception to the general rule of "no duty to protect" set forth in *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989), a school employee may violate a student's substantive due process rights through an affirmative act that created or increased the danger of harassment by other students. *See, e.g.*, *L.W. v. Grubbs*, 974 F.2d 119, 121-122 (9th Cir. 1992) (articulating doctrine in context of an assault by a third-party). In determining whether the exception applies, the Court assesses: (1) whether affirmative actions of the defendant placed the individual in danger he or she would not have

10

1   otherwise have faced; (2) whether the danger was known or obvious; and (3) whether the defendant

2   acted with deliberate indifference to the danger.  *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir.

3   2012).  There is substantial evidence that Yeager took affirmative actions that exposed H.W. to

4   dangers he would not have otherwise faced.  He refused to provide the support Haun requested to

5   supervise A.S. and failed to follow up on his promises to personally assist Haun.  .  (Ex. E to IH

6   Dec., Haun Depo Vol.2 at 170:6-17.)  He denied requests by the parents of A.S. to remove him

7   from the class.  (Ex. D to IH Dec., Yeager Depo Ex. 2 at p. 15, 17) When H.W.'s parents informed

8   Yeager and Haun of H.W.'s behavioral changes at home during the SST Meeting on 9/11/14,

9   Yeager and Haun represented they knew of nothing at school that would be contributing to those

10  behaviors and he concealed their knowledge of the abuse H.W. was suffering at the hands of A.S.

11  But for this affirmative misrepresentation and concealment, H.W.'s parents would have protected

12  him from A.S. by removing H.W. from the class. (AW Dec., ¶ 26-27)

13          These actions satisfy the requirement of "affirmative action" for the purposes of

14  establishing under the state-created danger theory.  In meeting this element, Plaintiffs need not

15  show that the Defendants "caused the harm." Rather, "the . . . cases clearly contemplate § 1983

16  liability for the state actor who, though not inflicting plaintiff's injury himself, has placed plaintiff

17  in the harmful path of a third party not liable under § 1983." *Kennedy v. City of Ridgefield*, 439

18  F.3d 1055, 1062 (9th Cir. 2006)  Here, the Defendants concealed what they knew about the abuse

19  H.W. was suffering at school, thus satisfying the requirement of affirmative action. *T.E. v. Grindle*,

20  599 F.3d 583, 590–91 (7th Cir. 2010)(liability based on concealing reports of abuse); *Doe v.*

21  *Methacton Sch. Dist.*, 880 F. Supp. 380, 384 (E.D. Pa. 1995)(concealing predilection to pedophilia

22  from potential employer); *Kuyper v. Bd. of Cty. Commissioners of Weld Cty., Colo.*, 2010 WL

23  1287534, at *6 (D. Colo., 2010)(concealing history of misconduct from foster parents).  In

24  addition, Defendant Yeager failed to respond to complaints of A.S.'s harassment.  *V.S. by &*

25  *through Sisneros v. Oakland Unified Sch. Dist.*, 2015 WL 3463475, at *4 (N.D. Cal., 2015)(failure

26  to act to protect student or otherwise respond to the danger following reports of assaults on bus)

27  Yeager also refused requests to move A.S. from the classroom and requests from Haun for

28  additional help in preventing assaults by A.S.  *Anderson v. Solis*, 2013 WL 245232, at *6 (N.D.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS                    2:15-cv-01572-KJM-EFB
MOTION FOR SUMMARY JUDGMENT

Cal. 2013)(Supervisor denied employees request additional security in dealing with dangerous patient); *Enright v. Springfield Sch. Dit*.,, 2007 WL 4570970, at *6 (E.D. Pa. 2007)(Dangerous student assigned to plaintiff's bus over parents' objections)

Defendants were certainly aware of the danger that A.S. posed to H.W.  Yeager knew that A.S. had a history of abusive behavior and that H.W. was his chief target. (Ex. B to IH Dec., Haun Depo Vol.1 at pp. 64:11-22; 70:18-21; 73:15-16; 74:3-9; 94:21-24; Ex. C to IH Dec. Yeager Depo Vol.1 at 92:20-24). Haun described A.S.'s behavior was "crazy" and "violent."  (Ex. D to IH Dec., Yeager Depo Ex. 2 at p. 5.)  She also stated that she could not adequately supervise the classroom by herself because of A.S.'s behaviors and that her behavior management system was "not working." (Ex. D to IH Dec., Yeager Depo Ex. 2 at p. 5; 92:24-93:8, 72:25-73:6, **Ex. E** to IH Dec., Haun Depo Vol.2 at 170:6-171:6.)

The record demonstrates Yeager was deliberately indifferent to the bullying of H.W. Yeager was aware that A.S. had previously attacked and injured H.W. and others but concealed this from H.W.'s parents refusing all requests for interventions, including assessing A.S. for behavior and emotional disturbance, removing A.S. from the classroom and/or providing support staff. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 92:24-93:8, 72:25-73:6, **Ex. E** to IH Dec., Haun Depo Vol.2 at 170:6-171:6.; **Ex. D** to IH Dec., Yeager Depo Ex. 2 at pp. 1, 15, 17.)   Any one of these interventions could have protected H.W. but Yeager allowed the dangerous conduct to continue unabated and H.W. was repeatedly assaulted and ultimately traumatized. (**Ex. B** to IH Dec., Haun Depo Vol.1 at pp. 64:19-22; 70:18-21; 73:15-16; 74:3-9; 94:21-24; **Ex. C** to IH Dec. Yeager Depo Vol.1 at 92:20-24.)   As the Sixth Circuit stated in explaining the deliberate indifference standard: [W]here a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances. *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000):

**D.  Defendant LUSD Is Not Entitled To Summary Judgment On Plaintiff's Claims Under Section 504 And Title II Of The ADA.**

The Rehabilitation Act of 1973, 29 U.S.C. §701, *et. seq.* and Title II of the ADA prohibit

12

discrimination on the basis of disability in federally funded programs.  This prohibition against discrimination is specifically extended to public school systems in Section 504. 29 U.S.C. § 794(b)(2)(B). The analysis under both statutes is similar.  *See Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) ("We examine cases construing claims under the ADA, as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts"). It is undisputed that H.W. is disabled for the purposes of ADA and section 504.   A disabled student suffering from peer on peer harassment may pursue two distinct theories under ADA and Section 504 and Title II – one based on the school district's knowledge of the disability based harassment and the school's failure to respond adequately to the bullying, which is analyzed under a standard similar to that set forth in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), and another based on the district's refusal to make "reasonable accommodations" to address known bullying amounting to a denial of the disabled student's right to "meaningful access" to a free appropriate education, which is analyzed under a standard similar to that set forth in *Duvall v. County of Kitsup*, 260 F.3d 1124, 1138 (9th Cir. 2001). *See Mark. H v. Lemahieu*, 513 F.3d 922, 938 (2008) ("[A] public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."); *see also M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 651 (9th Cir. 2004) (discussing the denial of a FAPE under the IDEA).

To prove disability-based peer harassment under the former theory, the plaintiff must show: (1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment. *Visnovits v. White Pine Cty. Sch. Dist.*, No. 3:14-CV-00182LRH-VPC, 2015 U.S. Dist. LEXIS 52248, at *8 (D. Nev. Apr. 21, 2015)  As with proof of motive in other contexts, the element of whether H.W. was harassed based on his disability may be met with either direct or circumstantial evidence and involves questions of fact that normally should be left for trial. *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) ("It was error in this case for the District Court to resolve the

13

disputed fact of motivation at the summary judgment stage."). It is undisputed that both A.S. and H.W. were perceived as disabled. There is no evidence in the record that any other child in the class was perceived as being disabled. Research suggests that children with disabilities are at an increased risk of being bullied and bullying others. (Ponton Dec., ¶ 4.) *See, e.g.,* Bullying and Youth with Disabilities and Special Health Needs, available at https://www.stopbullying.gov/at-risk/groups/special-needs/index.html. Haun also testified that H.W. was A.S.'s primary target for abuse. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 64:11-18.)   Taking the evidence in the light most favorable to Plaintiff, a jury could reasonably infer from that A.S. was motivated to abuse H.W. based on his perceived disability. As for the remaining elements, Yeager's concealment of the abuse and his failure to take any steps to protect H.W. despite notice of this abuse and telling Haun "in no uncertain terms" not to report A.S. to child protective services amounted to deliberate indifference. (**Ex. B** to IH Dec., Haun Depo Vol.1 at 137:20-24.)   Defendants' reliance on *Garedakis v. Brentwood School District*, 183 F.Supp.3d 1032 (N.D. Cal. 2016), is misplaced as in that case there was no direct evidence that defendant physically abused any of the plaintiffs. Furthermore, the section of *Garedakis* quoted at length by Defendants is discussing the liability of supervisory defendants for the acts of a teacher which is not at issue in this case.

H.W. also has a claim under section 504 and the ADA based on the district's failure to provide reasonable accommodations to ameliorate the bullying and therefore deprived him of his right to a free appropriate public education.  Section 504 requires that school districts provide a "free appropriate public education" to qualified students who have an actual or perceived physical or mental impairment that substantially limits one or more major life activities.  34 C.F.R. § 104.33(a); Declaration of Joseph Schwartzberg, Ed.D.(hereinafter "Schwartzberg Dec.", at ¶ 89.) The section 504 implementing regulations prohibit harassment by peers that is "sufficiently serious to deny or limit a disabled student's ability to participate in or benefit from the school's education programs and activities (in other words, creates a hostile environment)." U.S. Department of Education, Office for Civil Rights, Parent and Educator Resource Guide to Section 504 in Public Elementary and Secondary Schools (December 2016) at p. 32; *see also T.K. v. N.Y.C. Dep't of Educ.*, 779 F. Supp. 2d 289, 315 (E.D.N.Y. 2011) (in considering claims of whether peer on peer

harassment violates section 504 "[r]eliance on the expert guidance provided to school districts by the Federal Department of Education is appropriate").  When a student with a disability is harassed or bullied on *any* basis, the school's responsibilities under section 504 are triggered because the bullying or harassment may result in a denial of the "free appropriate public education" under the section 504 regulations and, if that occurs, it must be remedied.  *Id.* at 34; (Schwartzberg Dec., ¶ 89). A section 504 free appropriate public education may be denied to a student when the effects of the bullying include adverse changes in the student's academic performance or behavior.  *See* U.S. Department of Education, Office for Civil Rights, Dear Colleague Letter: Responding to Bullying and Harassment (Oct. 21, 2014) at p. 6; (Schwartzberg Dec., ¶ 93.)  The bullying H.W. by A.S. certainly qualifies under that standard as it had a substantially detrimental effect to his mental health and substantially interfered with his academic performance and his ability to participate in or benefit from the services, activities, or privileges provided by a school in that H.W. was contemporaneously diagnosed with post-traumatic stress disorder from which he still suffers, homeschooled for kindergarten, and was afraid to attend school when he returned for First grade. (Schwartzberg Dec., ¶ 51; AW Dec., ¶ 24-25.)  All of this will have profound negative effect on his education going forward. (Schwartzberg Dec., ¶ 52.)

A plaintiff may establish a claim for damages for a violation of the Title II of the ADA and § 504 on a showing that a school district acted with "deliberate indifference." *Duvall v. County of Kitsup*, 260 F.3d 1124, 1138 (9th Cir. 2001).  Deliberate indifference requires both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. See Id. at 1139.

The district was deliberately indifferent to the denial of a section 504 free appropriate public education for the reasons described in the section on Substantive Due Process. Defendants (1) knew that such harm to H.W.'s right to a free appropriate public education as provided for under the section 504 regulations was substantially likely where H.W. was routinely and systematically bullied by A.S.; and (2) failed to act upon that likelihood by taking reasonable steps to protect H.W. from harassment and bullying by A.S.  Instead of intervening and making sure needed changes were made promptly to ensure H.W.'s safety, the defendants effectively placed the

onus on H.W., a disabled student, to avoid or handle the bullying on his own. The district failed to provide any remedial measures to H.W. once it was on notice of the harassment and bullying. The district failed to address the bullying at H.W.'s SST meeting.  The district failed to take even the minimal step of informing H.W.'s parents the bullying was occurring.  These facts, together with Yeager's statement that he took no responsibility for abuse in the bathroom evidences deliberate indifference subjecting the district to liability for damages under section 504 and Title II of the ADA.

**E.  Defendants Are Not Entitled To Summary Judgment On Plaintiff's Claim Of Negligence.**

It is well settled under California law that "a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." *Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal.3d 508, 513 (1978).  "Either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision." *Dailey v. Los Angeles Unified Sch. Dist.*, 2 Cal.3d 741, 747 (1970).  Education Code § 44807 imposes a duty on schools to "hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess." Liability can arise when one student injures another as the result of negligent or nonexistent supervision. *Lucas v. Fresno Unified School Dist.*, 14 Cal.App.4th 866, 871-872 (1993). For example, in *J.H. v. Los Angeles Unified Sch. Dist.*, 183 Cal. App. 4th 123, 128-29, plaintiff was sexually assaulted at school by a student with a history of discipline problems.  The court found that the school's negligence in supervising students and whether those injuries were an unreasonable risk of harm that was foreseeable by defendants were questions of fact for the jury.  It is also not necessary for plaintiff to show that defendants were aware of a specific risk of a specific type of sexual assault.  *See M. W. v. Panama Buena Vista Union Sch. Dist.*, 110 Cal. App. 4th 508, 521 (2003).

Defendant Yeager asserts his conduct in response to A.S.'s abuse of H.W. was "reasonable as a matter of law." The facts demonstrate otherwise. As discussed above in relation to the claim that Yeager was deliberately indifferent, it is clear that Yeager was aware of the abuse and did not ensure the adequate classroom supervision that would have prevented the foreseeable harm. Haun

16

Depo. Vol. II at p. 170:6-17. Haun informed Yeager that her behavioral management system was not working on A.S. (**Ex. D** to IH Dec., Yeager Depo Ex. 2 at p. 5.) She nonetheless continued to use this system as the chief means of adjusting A.S.'s behavior. It is clear from A.S.'s subsequent conduct that the system only served to reinforce A.S.'s negative behavior cycle and did nothing to protect the other children in the class. (Schwartzberg Dec., ¶ 109.) Throughout all this, no steps were taken to protect H.W. as the chief victim of A.S.'s abuse.

Defendants should be precluded from presenting evidence on topic of what specific disciplinary actions Haun took. Speaking as the Rule 30(b)(6) witness regarding discipline of A.S. while at school, Yeager admitted that he was personally unaware of what if any specific disciplinary action Haun took with respect to A.S. and could only speak to general administrative policies at the school. (**Ex. H** to IH Dec., 30(b)(6) Yeager Depo., at 31:1-7.) *See, e.g., Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (refusing to allow party to introduce designated matters into evidence); *Ierardi v. Lorillard, Inc.*, Civil Action No. 90-7049, 1991 U.S. Dist. LEXIS 11320, at *8 (E.D. Pa. Aug. 5, 1991) ("Under Rule 30(b)(6), if the designee testifies that [defendant] does not know the answer to plaintiffs' questions, [defendant] will not be allowed effectively to change its answer by introducing evidence during trial.").

Defendants' negligence is also demonstrated by the school's lack of a bathroom policy which, coupled with inadequate, supervision created a danger that H.W. would be inappropriately touched by A.S. in the bathroom. Yeager was aware that there was a problem with boys and girls intermixing in the bathrooms prior to the beginning of the school year and there were no doors on the stalls. (**Ex. B** to IH Dec., Haun Depo. Vol.1 at 104:5-22.) No steps were taken to ensure that only one student could use the bathroom at a time. Although Haun stated that she tried "to make sure A.S. was never in the bathroom alone with another child," her efforts were stymied from lack of support. (**Ex. B** to IH Dec., Haun Depo. Vol.1 at 71:25-73:3.) Yeager told Haun and the other kindergarten teachers "he wasn't taking responsibility" for the bathrooms and that it was "their problem" and that teachers would be "liable" if anything happened in the bathrooms. (**Ex. B** to IH Dec., Haun Depo. Vol.1 at 107:16-108:9.) The lack of clear policy directives regarding the use of the bathroom contributed to the inappropriate conduct in the bathroom occurring.

Defendants Nicholas and Gill were both directly responsible for the implementation of policies, including the districts' bathroom policies and the school's anti-bullying policies and their negligence in implementing these policies was a factor in causing the harm H.W. experienced.

**F.  Defendants Are Not Entitled To Summary Judgment On Plaintiff's State Civil Rights Claims.**

Plaintiff also has claims under the section 220 of the Education Code and the Unruh Act for gender and disability discrimination.  The legal theories behind these claims mirror the Federal claims discussed above.  Defendants assertion that these claims are barred because Plaintiff failed to comply with California Government claims act is based on an unduly restrictive reading of that act.  The purpose of the claim filing requirement is to give sufficient notice to the entity to investigate and evaluate, not to eliminate meritorious claims. *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 449 (2004) ("If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted.").  "So long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits." *Id.*  "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts." *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004). H.W.'s claims for gender and disability discrimination do not represent a complete shift in allegations or an effort to premise civil liability on acts or omissions committed at different times or by different persons, but are merely different theories of liability predicated on the same fundamental actions or failures to act alleged against the defendants in his notice claim, that H.W. was abused by another student, that the school employees failed to take appropriate steps to rectify and prevent the abuse, the identity of individuals Plaintiff believed to be responsible, and that the actions and inactions caused H.W.'s injury. *IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2013 U.S. Dist. LEXIS 177858, at *12 (E.D. Cal. Dec. 17, 2013).

**G.  Triable issues of material fact remain on Defendants Claimed Immunities to plaintiff's State Law Claims**

**1.     Discretionary Immunity**

In applying §820.2, the California Supreme Court has drawn a line between "planning" and

"operational" functions of government, reserving immunity for "areas of quasi-legislative policy making." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981-82 (1995). For immunity to apply, the defendants must show that the decisions in question are "basic policy decisions" made at the "planning" stage of [the entity's] operations,' " rather than "routine duties incident to the normal operations" of the employee's office or position. *Barner v. Leeds,* 24 Cal.4th 676, 685 (2000).

The "planning" vs. "operational" distinction drawn in *Caldwell* defeats the Defendants' claim of immunity. "Accordingly [referring to the planning vs. operational distinction], this section provides no basis for blanket immunization of all of the specific and individual actions undertaken in response to the bullying of plaintiff at the hands of another student." *J.E.L. v. San Francisco Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1202 (N.D. Cal. 2016); *Corales v. Bennett,* 488 F.Supp.2d 975, 990 (C.D.Cal.2007) (denying immunity under Government Code § 820.2 to a principal engaged in school discipline); *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1152 (E.D. Cal. 2009)(same; decision to call police in response to actions of student)

Furthermore, many of the claims do not involve discretionary decisions at all.  Plaintiffs claim that Defendants failed to carry out a mandatory duty to report abuse is obviously not covered by §820.2. Nor are the claims that Defendants acted in a discriminatory fashion or inflicted emotional distress. *Massey v. Banning Unified Sch. Dist.*, 256 F. Supp. 2d 1090, 1096–97 (C.D. Cal. 2003) (820.2 does not apply to claim of discriminatory treatment); *Faurie v. Berkeley Unified Sch. Dist.*, No. C 08-0060 TEH, 2008 WL 820682, at *13 (N.D. Cal. Mar. 26, 2008) (" Harassment and intentional infliction of emotional distress through harassment are not "basic policy decisions" which fall within the scope of § 820.2.")  Nor does the immunity apply to allegations that District employees failed to notify parents that their children had been abused.  *Johnson v. State,* 69 Cal. 2d 782, 798, 447 P.2d 352, 363 (1968) (immunity does not apply to failure to warn); *Engert v. Stanislaus Cty.,* No. 1:13-CV-00126 LJO, 2015 WL 3609315, at *26 (E.D. Cal. June 8, 2015) ("The Court therefore finds that, as a matter of law, a failure to warn is not protected by § 820.2 immunity. . .")  Defendants' reliance on *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1390 (N.D. Cal. 1997) is misplaced as the analysis in that case has been superseded rendering it questionable precedent and the court inexplicably fails to address the planning vs.

19

operation distinction drawn in *Caldwell*.

**2.    Coverdell Act**

Numerous triable issues of material fact defeat immunity under the Coverdell Act, 20 U.S.C. §§ 7941 *et seq.* First, the immunity does not apply to constitutional claims. *Dennis v. Bd. of Educ. of Talbot Cty.*, 21 F. Supp. 3d 497, 502 (D. Md. 2014)(no immunity for violations of state or federal constitution) Nor does it apply unless the educator "carried out [their actions] in conformity with Federal, State, and local laws (including rules and regulations)." Id. at § 7946(a)(2), 7946(a)(4) Therefore, the Coverdell Act does not bar Plaintiffs' claims under Title II of the ADA, section 504, Education Code § 220.  Furthermore, Plaintiffs allege that Defendants violated mandatory reporting duties under Penal Code §§ 11166(a) and (i)(1) as well as LUSD Board Policy 5131.2 on Bullying (IH Dec. **Ex. U**) . (Schwartzberg Decl, ¶ 57)  Defendants also violated Education Code §§ 32261 and 44807 which guarantee students safe schools and require schools to hold students to "strict account for their conduct." Lastly, the immunity is no defense to claims that the teacher was guilty of "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher." § 7946(a)(4) At a minimum, triable issues of fact abound as to Defendants' gross negligence. " . . . the determination of whether a party is liable for gross negligence is a matter of fact that must be left to the determination of the reasonable persons making up the trier of fact." *F.D.I.C. v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998)(internal quotation marks omitted) The record could also support a jury's conclusion that Yeager was deliberately indifferent to the bullying as well as  the conclusion that Yeager was grossly negligent.

**IV.    CONCLUSION**

Triable issues of fact exist with respect to all of Plaintiffs' claims and the Motion should be denied.  For the foregoing reasons, Plaintiffs respectfully request the Court DENY Defendants' Motion for Summary Judgment in its entirety.

Dated: August 11, 2017                         LAW OFFICES OF PETER ALFERT, PC


                                                        _____/s/  Peter W. Alfert_____

20