UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANNA WORMUTH, SCOTT WORMUTH and H.W., a minor, by and through his guardians ad litem ADRIANNA WORMUTH and SCOTT WORMUTH, | No. 2:15-cv-01572-KJM-EFB |
| Plaintiff, | ORDER |
| v. | |
| LAMMERSVILLE UNION SCHOOL DISTRICT, JAMES YEAGER, DAWN IBBS, TERESA HAUN, KIRK NICHOLAS, and KHUSHWINDER GILL, and DOES 1-30, | |
| Defendants. | |

A five-year-old boy with a speech impediment was bullied and harassed at school. His parents, on his behalf, now sue the school district and several individual district employees for not preventing bullying and for not adequately responding to it. Plaintiff contends defendants' inaction amounts to equal protection and substantive due process violations, disability discrimination and negligence. Defendants move for summary judgment. Mot., ECF No. 102. Plaintiff opposes. Opp'n, ECF No. 113. The court held a hearing on September 22, 2017. Hr'g Mins., ECF No. 147. As explained below, the court GRANTS in part and DENIES in part defendants' motion.

I.    BACKGROUND

    A.    Factual Disputes and Evidentiary Objections

The following facts are undisputed unless otherwise stated. Where a genuine dispute exists, the court draws reasonable inferences in plaintiff's favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). Parties may object to the cited evidence that proves the undisputed facts. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010). But the evidentiary admission standard at summary judgment is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The court notes objections, if relevant, as they arise.

    B.    Factual Record

Two young boys, plaintiff ("H.W.") and another five-year-old child ("A.S."), were classmates in a transitional kindergarten class at Altamont School. Pl.'s Fact ("PF") 1, ECF No. 117. Plaintiff has special education needs and a noticeable speech impediment. Defs.' Fact ("DF") 3, ECF No. 103. Plaintiff started school on August 20, 2014, along with 15 to 24 classmates. PF 1, 5. This was H.W.'s first school experience. PF 2. Before school began, plaintiff's parents told the school about his disability. Yeager Decl. ¶ 7, ECF No. 102-3. Within the first week, plaintiff's teacher, Ms. Haun, noticed A.S. acting aggressive towards his classmates, particularly towards plaintiff. PF 9, 10. *See also* Alfert Decl. Ex. B ("Haun Dep."), ECF No. 131-2, at 26:8-14. She immediately told the school principal, Mr. Yeager, about A.S.'s aggression. DF 19; Haun Dep. 26:9-14. Then, on August 26, 2014, Ms. Haun told Principal Yeager that plaintiff and A.S. should be assessed for special education services. PF 19.

Two weeks later, on September 11, 2014, plaintiff's parents met with the student study team ("SST"), which consisted of Principal Yeager, Ms. Haun and the District's speech and

language pathologist Ms. Dawn Ibbs[1] to discuss plaintiff's potential special education needs. PF 24. Mrs. Adriana Wormuth, plaintiff's mother, contends she also discussed behavioral changes plaintiff had exhibited at home since school started, and she asked if anything at school could be causing these changes. *See* PF 24-25 (citing A. Wormuth Dep., ECF No. 131-15, at 19:12-19, 25:7-14).

Around this time, A.S.'s behavior escalated: He started habitually kicking his classmates and spitting on them. DF 21; PF 6-7. A.S. targeted H.W. the most and, at least once, made fun of plaintiff's teeth. DF 7; PF 6; A. Wormuth Dep. 271:9-24. Ms. Haun reported this behavior to Principal Yeager. DF 20, 24-25, 46. Principal Yeager met with A.S.'s mother to discuss A.S.'s behavior: A.S's mother assured Principal Yeager she was disciplining A.S. at home and working with Ms. Haun to correct A.S.'s behavior. DF 21. During class, Ms. Haun tried to do just that: She supervised A.S. more closely, counseled him, used motivational behavior charts, and separated him from other students. DF 16. She also asked Principal Yeager for more help supervising A.S., but received none; she became upset when a fellow teacher was supposed to help, but never did. *See* Haun Dep. 72:25-73:6.

A.S.'s behavior worsened. On September 17, 2014, he pushed plaintiff off a play structure and kicked him in the head, leaving a red bump. DF 22; PF 32. Mrs. Wormuth noticed the bump and then emailed Ms. Haun. PF 34. A.S. also threw plaintiff's lunch over the fence and continued to push, kick and spit on him and other children. DF 27, 29. Ms. Haun immediately reported these incidents to Principal Yeager. DF 22.

By October, Ms. Haun's concerns about A.S. charted new territory. Ms. Haun testified A.S. was following 60 to 80 percent of his classmates into the bathroom and either watching or touching them inappropriately. *See* PF 12; Haun Dep. 71:1-12. She emailed Principal Yeager a report about this behavior "immediately." PF 12; Haun Dep. 71:1-15. The bathroom at issue, directly accessible to two classrooms, has no bathroom doors; only curtains shield the stalls. *See* DF 36-37. Principal Yeager had never before received reports or complaints

---

[1] Ms. Ibbs was initially a named defendant but has since been dismissed. *See* ECF No. 29.

from "any students, staff, or parents" about inappropriate student behavior in any campus bathroom.  DF 38.

But that changed on October 2, 2014.  Two parents complained to Ms. Haun by e-mail about inappropriate bathroom contact: (1) the mother of G.W., a female student, said A.S. had opened the curtain and watched G.W. use the restroom; and (2) that morning, Mrs. Wormuth vaguely mentioned  that her son was "expressing concern" about the bathroom, though he would not tell her what happened; only that something happened.  DFs 32-33.  Ms. Haun forwarded the emails to Principal Yeager.  PF 31.  Later that day Ms. Haun heard a student scream in the bathroom: She found a girl standing at the sink with A.S. behind her, and the girl said A.S. had pulled down her dress and panties.  DF 34.  After learning about these incidents, Principal Yeager immediately suspended A.S.  DF 35.  On October 5, 2014, three days after this suspension, Mrs. Wormuth emailed Ms. Haun, revealing the details plaintiff told her about his bathroom incident.  DF 40.  Ms. Haun forwarded the email to Principal Yeager the next day.  DF 40.  But Ms. Haun had already known these details: On September 30, 2014, Ms. Haun had documented that A.S. touched plaintiff's bare bottom while plaintiff was urinating, but the record contains no evidence that she reported this information to Principal Yeager.  Haun Dep. 108:22-2, 137:3-5.

During A.S.'s suspension, school officials met with A.S.'s parents and proposed transferring A.S. to a different elementary school.  DF 41.  His parents had previously asked to remove A.S. from Ms. Haun's class, but for unrelated reasons.  Specifically, they had asked in mid-September if A.S. could be moved to a class that met earlier so he could go to school with his older brother; Principal Yeager denied the request because the class was full and in his view the change would disrupt A.S.'s routine.  *See* DF 26.  The SST team met with A.S.'s parents and agreed to transfer A.S., however, effective October 8, 2014.  DF 42.  That same day, plaintiff was taken to Stanford Children's Health and diagnosed with post-traumatic stress disorder.  PF 85; Schwarzberg Decl., ECF No. 118, ¶ 51; Ponton Decl., ECF No. 119, ¶ 3.  Mrs. Wormuth then homeschooled plaintiff throughout kindergarten.  PF 85; Schwarzberg Decl. ¶ 51.

At all relevant times, defendant Kirk Nicholas was the District Superintendent and defendant Khushwinder Gill was the Assistant Superintendent.  Nicholas Decl., ECF No. 102-4,

¶ 2; Gill Decl., ECF 102-2, ¶ 2.  Nicholas's responsibilities as Superintendent include general management, oversight, budgeting and strategic direction.  Nicholas Decl. ¶ 2.  Gill was responsible, in part, for managing and overseeing employee, parent and community complaints.  Gill Decl. ¶ 2.  Principal Yeager met with Gill at least twice to discuss A.S.'s behavior, first in early September and again immediately after A.S.' suspension on October 3, 2014.  Hansen Decl. Ex. C ("Yeager Dep."), ECF No. 114, at 47:2-8, 49:14-24, 157:14-16.[2]  The job descriptions for Gill and for Nicholas each encompassed high-level school policy decisions; neither of them were responsible for daily supervision, evaluation or disciplining of students, teachers or administrators.  Gill Decl. ¶ 3; Nicholas Decl. ¶ 3.

C.      Procedural History

Plaintiff filed this lawsuit in July 2015.  ECF No. 1.  Plaintiff once amended the complaint and stipulated to dismiss certain claims and certain defendants.  *See* First Am. Compl. ("FAC"), ECF No. 14 (filed December 2015); Stipulations, ECF Nos. 122, 129 (filed August 2017).  The stipulations had the effect of leaving one plaintiff, H.W., six claims and four defendants.  ECF No. 129.  The six remaining claims are as follows: An equal protection and substantive due process claim against Principal Yeager under 42 U.S.C. § 1983 (claim one); a Title II Americans with Disabilities Act ("ADA") disability discrimination claim against the Lammersville Union School District ("District"), in which the Altamont School is located (claim 2); another disability discrimination claim against the District, under Section 504 of the federal Rehabilitation Act (claim 3); a negligence claim against the District, Superintendent Kirk Nicholas, Assistant Superintendent Khushwinder Gill, and Principal Yeager (claim four); an Unruh Act disability discrimination claim against the District and Principal Yeager (claim five); and a California Education Code section 220 claim against the District (claim six).

---

[2] Exhibit C is one of several exhibits plaintiff submitted by e-mail for filing under seal; it is the only exhibit submitted in this way on which the court relies as relevant to the pending motion.  *See* Hansen Decl., ECF No. 114 (describing submitted exhibits).  Exhibit C does not qualify for sealing, and so plaintiff will be directed to file it on the docket to complete the record.  Plaintiff may, however, redact the full name of A.S. wherever it appears in Exhibit C, leaving only the first initials.

Defendants have moved for summary judgment on all claims.  Plaintiff has opposed.  Defendants filed a reply brief, ECF No. 140 (filed Sept. 5, 2017), and evidence to support their reply brief, ECF No. 143 (filed Sept. 15, 2017).  Plaintiff has moved to strike this belated, piecemeal filing.  ECF No. 141.  Defendants have not responded to the motion to strike nor provided any justification for its belated filing, and the deadline to do so has now lapsed.  Pl.'s Notice of Non-Opp'n, ECF No. 146.  Accordingly, the court will not consider any evidence filed in support of defendants' reply brief.  *See* Yu Decl., EC No. 143.

II.    LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In determining summary judgment, a court uses a burden-shifting scheme.  The moving party must first satisfy its initial burden, which requires "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted).  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  If the moving party meets its initial burden, however, the burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  To carry their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts.").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . .  Only disputes over facts that

6

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (original emphasis).

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

III.     <u>ANALYSIS</u>

    A.     <u>Claim One: Equal Protection and Substantive Due Process (42 U.S.C. § 1983)</u>

Section 1983 provides a cause of action for persons whose federal rights have been violated by someone acting under color of law. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Here, it is undisputed Principal Yeager acted under color of state law: He committed the allegedly unlawful actions in his role as principal of a public elementary school. Plaintiff contends Principal Yeager violated the equal protection clause, through both disability and gender discrimination, and violated plaintiff's substantive due process rights by creating the danger that led to the assaults he endured. *See* Opp'n at 13-18. At hearing, plaintiff withdrew his disability discrimination theory, focusing only on his gender discrimination and danger-creation theories, both of which he raises for the first time in opposition to summary judgment. As explained below, neither theory survives.

    1.     <u>Equal Protection: Gender Discrimination Theory</u>

Plaintiff's gender discrimination theory is based on Principal Yeager's allegedly treating A.S.'s female victims differently from A.S.'s male victims.

a)      Belatedness of Theory

Defendants objected at hearing to the court's considering this theory because it was mentioned for the first time in opposition to summary judgment. Federal Rule of Civil Procedure 8 requires the complaint's allegations to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Pickern v. Pier 1 Imports, Inc*., 457 F.3d 963, 968 (9th Cir. 2006). As such, a party generally cannot oppose summary judgment by raising theories that lie outside the scope of their pleadings. *See Wasco Prods., Inc. v. Southwall Techs., Inc*., 435 F.3d 989, 991-92 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation and quotation marks omitted). The federal rules, however, abolished the "theory of pleadings" doctrine, which previously restricted plaintiffs to their pleaded theories; now the rules "evince a belief" that a party should recover on a valid claim "regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage," 5 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219 (3d ed. 2017), but only if the "late shift in the thrust of the case will not prejudice the other party[.]" *Id.*

The critical question is whether a plaintiff's new theory exceeds the complaint's scope and the limits of discovery such that defendants could not fairly anticipate it. If yes, the court should not consider the new theory. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (affirming refusal to consider plaintiff's theory raised for first time on summary judgment; doing so would have required defendants to develop "entirely different defenses" after discovery closed); *see also Jimmie's Limousine Serv., Inc. v. City of Oakland*, No. C 04-03321 WHA, 2005 WL 2000947, at *5 (N.D. Cal. Aug. 18, 2005) (rejecting new theories at summary judgment where discovery ended months before and trial was two months away; "new theories of liability at this late stage of litigation would prejudice defendants.").

Plaintiff's complaint barely encompasses a gender discrimination theory. Nowhere does the complaint expressly allege plaintiff was treated differently because he is male. Merely mentioning the equal protection clause does not mean any theory under that clause is fair game. *See Coleman*, 232 F.3d at 1292 (denying "disparate impact theory" where complaint

8

included only "disparate treatment theory"; although pled under same law and including overlapping facts, former involved different burdens, proof requirements and defenses; belated notice made it difficult, if not impossible, for defendant to respond). Plaintiff's insistence that the defense here bears fault for not probing the underlying legal theories is not well founded. *See* Opp'n at 14. The complaint appears restricted to disability discrimination. *See* FAC ¶¶ 40-43.

Nevertheless, read closely, plaintiff's complaint is sufficient, if barely so: Plaintiff notes the gender of A.S.'s other bathroom victims, both female, and he alleges that A.S. was suspended the day after those females were allegedly harassed. These allegations, though minimal, are enough to put defendants on notice of a potential gender discrimination claim. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (reversing dismissal of § 1983 claim where complaint omitted claim; explaining complaint mentioned facts necessary to support constitutional claim, so omitting precise statutory vehicle was not fatal). Equally important, defendants have not adequately explained what prejudice would result from allowing reliance on this theory now. The new theory pertains to the same events and the same individuals as plaintiff's disability discrimination claims analyzed below, and both discrimination claims summon virtually the same defense: Principal Yeager's decisions were motivated by reasons other than plaintiff's individual characteristics. The court will consider plaintiff's gender discrimination theory.

b) Merits Analysis

Even considering plaintiff's gender discrimination theory, his equal protection claim cannot survive based on this theory. The Fourteenth Amendment provides, in relevant part, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Such denials by a person acting under color of state law are actionable under § 1983. To succeed on a § 1983 equal protection claim, a plaintiff must show the defendant, acting under color of state law, "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted). "[A] long line of Supreme Court cases makes clear that the Equal Protection Clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d

9

712, 716 (9th Cir. 1995) (citing cases); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.") (citations and quotation marks omitted).

Here, plaintiff contends Principal Yeager violated plaintiff's Fourteenth Amendment equal protection rights by engaging in gender discrimination. To survive summary judgment, plaintiff must point to evidence sufficient to permit a reasonable juror to find, by a preponderance of the evidence, that discriminatory intent motivated Principal Yeager's conduct. *See, e.g.*, *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-49 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010). Plaintiff contends there is a triable factual issue as to whether Principal Yeager treated A.S.'s two similarly situated female victims differently from the way he treated plaintiff. Opp'n at 15-16. He says Principal Yeager suspended A.S. immediately after learning A.S. harassed two female students, yet Principal Yeager did nothing to protect plaintiff from A.S.'s harassment despite hearing about it from Ms. Haun consistently for approximately six weeks. *Id.* (citing Yeager Dep. 151:5-8; 152:7-9; Haun Dep. 65:22-66:15). This, plaintiff contends, shows intentional gender discrimination. *Id.*

Plaintiff supports his discrimination theory by citing *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1383 (N.D. Cal. 1997). Opp'n at 16. There the court found an intentional gender discrimination claim was plausible so as to avoid dismissal, where the complaint alleged a school principal inadequately responded after a female student was harassed. *Nicole*, 964 F. Supp. at 1383. *T*he *Nicole* court's decision was at the early pleading stage, so the conclusion holds little relevance for a summary judgment determination. *Id.* at 1383-84 (basing its decision on "the facts alleged and the early stages of the proceedings[.]").

Here, no reasonable juror could find the record on summary judgment supports plaintiff's gender discrimination claim. The evidence shows, beyond dispute, that Principal Yeager's more vigilant response to A.S.'s harassment of two female students was based on the

nature of their complaints. No facts or evidence indicate Yeager's response was driven by gender in any respect. Before October, Principal Yeager had heard only that A.S. kicked, pushed, hit and spat on virtually every student in the class, boys and girls alike, albeit plaintiff more than others. He had not heard about any inappropriate touching of any student in the bathroom. DFs 20-25. But on October 2, 2014, Ms. Haun told Principal Yeager that A.S. followed two female students into the bathroom and may have touched them inappropriately. DF 31-35. Because the bathroom conduct was a new and entirely different form of harassment than had previously been reported, the victims of those incidents were not similarly situated to plaintiff. There is no evidence from which a reasonable juror might find Principal Yeager's different and more vigilante response to the plight of those students was based on their gender.

That plaintiff also was touched inappropriately in the bathroom, perhaps even earlier than the two female students, does not alter this conclusion: Principal Yeager learned about plaintiff's bathroom experience only after A.S. was already suspended. DF 40. That Ms. Haun knew earlier is irrelevant to Yeager's liability. *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1116 (E.D. Cal. 2011) ("Under § 1983, a defendant can only be held liable for his own individual actions.") (citation omitted). That Principal Yeager knew A.S. had bullied plaintiff in other ways does not show he discriminated against plaintiff based on plaintiff's gender. Indeed, Principal Yeager was told A.S. hit, kicked and spat on virtually everyone, boys and girls alike, including his teacher. *See* DF 11, 14-15. There is no evidence in this record from which a reasonable juror could find Principal Yeager denied plaintiff equal protection under the law based on his gender. This theory cannot survive summary judgment.

2.    Substantive Due Process: State-Created Danger Theory

Plaintiff also supports his § 1983 claim by contending Principal Yeager violated his substantive due process rights under a "state-created danger" theory, in concealing and misstating what Yeager knew about A.S.'s harassment, thereby heightening plaintiff's risk of harm. *See* Opp'n at 16-18. As with his gender discrimination theory, plaintiff first raises this state-created danger theory in his opposition brief.

a)      <u>Belatedness of Theory</u>

Defendants again object to considering this belated theory. The court first assesses whether the complaint fairly encompasses this new § 1983 theory. Plaintiff's theory is this: Because Principal Yeager "concealed what [he] knew about the abuse [plaintiff] was suffering at school," he "affirmatively' increased the danger [plaintiff] faced, which then led to the bathroom incident that caused his harm." Opp'n at 14. Although pled under a new Fourteenth Amendment vehicle (due process, not equal protection), the complaint's overall theme makes this claim predictable. The crux of plaintiff's lawsuit is that defendants inadequately responded to A.S.'s misbehavior and by doing so failed to protect plaintiff from being bullied. The complaint alleges a "deprivation of constitutional rights of H.W. by [defendants'] failure to act in response to notifications of bullying and harassment on the campus[,]" and explains defendants "repeatedly exposed H.W. to the risk of abuse, harassment, and ultimately, sexual attacks that left him with severe psychological injuries[.]" FAC ¶¶ 40, 44. Through these allegations, defendants could reasonably anticipate a state-created-danger claim. It does not unfairly prejudice defendants to consider this theory's merits.

b)      <u>Merits Analysis</u>

By forbidding state actors from depriving individuals of life, liberty or property without due process of law, the Fourteenth Amendment's due process clause serves to prevent the State from "abusing its power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (citations and quotation marks omitted). This clause does not, however, affirmatively oblige the State to keep people safe or protect them from the conduct of purely private parties that otherwise would violate due process. *Id.* at 197 ("As a general matter . . . a state's failure to protect an individual against private violence simply does not constitute a violation of due process.").

The Supreme Court's *DeShaney* opinion included language that has now spawned the exception to this general rule that plaintiff invokes here. In *DeShaney*, a child was beaten and permanently injured by his father. The child's mother sued the local officials who had permitted the child to remain with his father despite receiving complaints about abuse. *Id.* at 201. The

Court held the state was not constitutionally obligated to protect the child from this abuse because it did not occur "while [the child] was in the State's custody" nor did the state play a part in "creating" the dangers. *Id.* Relying on this language, most Circuits including the Ninth Circuit,[3] have held that a state actor can be held liable when it does "play a part" in creating the danger. In the absence of a Circuit split, or perhaps for other reasons, the Supreme Court has not considered a case that would clarify its view of the doctrine. *See Cutlip v. City of Toledo*, 488 F. App'x 107, 117 (6th Cir. 2012) (noting Court's silence).

How courts apply the state-created danger doctrine varies across jurisdictions, but it is consistently construed narrowly; it does not ensnare state officials when they increase someone's exposure to harm. *See Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998). In this Circuit, the plaintiff asserting danger-creation must show (1) a state actor affirmatively created or placed the plaintiff in danger he otherwise would not have faced, (2) the danger was "known or obvious," and (3) the state actor acted with "deliberate indifference" in the face of such known danger. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

(1)     Action versus Inaction

The "critical distinction" between the rule and the exception is a "stark one between state action and inaction." *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997). For plaintiff's theory to survive, the challenged conduct must be affirmative, not a mere omission or failure to act. *DeShaney*, 489 U.S. at 203 (although state actors "stood by and did nothing when suspicious circumstances dictated a more active role for them," liability did not attach); *cf. Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1247 (9th Cir. 1987) ("'[T]here is no

---

[3] *See Wood v. Ostrander*, 879 F.2d 583, 586 (9th Cir.1989); *see also Forrester v. Bass*, 397 F.3d 1047, 1057-58 (8th Cir.), *cert. denied*, 126 S. Ct. 363 (2005); *Butera v. District of Columbia*, 235 F.3d 637, 648-51 (D.C. Cir. 2001); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066-67 (6th Cir. 1998); *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996); *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995), *cert. denied*, 516 U.S. 1118 (1996); *Reed v. Gardner*, 986 F.2d 1122, 1125-26 (7th Cir.), *cert. denied*, 510 U.S. 947 (1993); *Cornelius v. Town of Highland Lake*, 880 F.2d 348, 356 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066 (1990), *overruled on other grounds by White v. Lemacks*, 183 F.3d 1253, 1256 (11th Cir. 1999). *But see Irish v. Maine*, 849 F.3d 521, 526 (1st Cir. 2017) ("While this circuit has discussed the possible existence of the state-created danger theory, we have never found it applicable to any specific set of facts."); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014) (same).

13

constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment.'") (quoting *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir. 1982)).

Here, plaintiff contends Principal Yeager created a danger when he (1) did not help Ms. Haun supervise A.S., despite promising to do so, (2) denied A.S.'s parents' request to remove A.S. from the class, and (3) concealed what he knew by affirmatively representing he knew nothing about A.S.'s abuse of plaintiff, thereby preventing plaintiff's parents from protecting him. *See* Opp'n at 10. Only the last allegation, discussed below, is plausibly affirmative. Plaintiff's argument that Principal Yeager affirmatively acted by "not" helping Ms. Haun supervise and by "not" moving A.S. to another school is unpersuasive, and an attempt to redefine passive inaction as action that is affirmative. Accepting plaintiff's formulation would turn the state-created danger exception into the rule. *See Morrow v. Balaski*, 719 F.3d 160, 176 (3d Cir. 2013), *as amended* (June 14, 2013) (noting this concern). The court declines the invitation.

The Ninth Circuit has not recognized a state-created danger theory based exclusively on a public school official's failure to detect and prevent student-on-student harassment. Several other Circuits have persuasively rejected such an inaction-based claim. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 854-55 (6th Cir. 2016) (failing to punish or insufficiently punishing assailants generally not an affirmative act, and, "even where it is, it typically does not create or increase the plaintiff's risk of harm," nor does "affirmatively returning a victim to a preexisting situation of danger[.]"); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014) (denying claim as based on failure to prevent peer harassment; explaining "evidence shows that the School District attempted to alleviate tensions between Montana and other students, by, for instance, arranging his seating in class away from a problematic student."); *Morrow v. Balaski*, 719 F.3d at 176 ("Parents . . . should be able to send their children off to school with some level of comfort that those children will be safe from bullies . . . . Nonetheless, 'the Constitution does not provide judicial remedies for every social ...

14

ill.'"; "[g]iven the limitations of *DeShaney* . . . it is now clear that the redress the [parents] seek must come from a source other than the United States Constitution) (citations omitted)); *see also Drain v. Freeport Union Free Sch. Dist.*, No. CV 14-1959 SJF AKT, 2015 WL 1014413, at *12 (E.D.N.Y. Jan. 14, 2015) ("Courts in this Circuit have routinely declined to deem allegations that a school district failed to act in peer-to-peer school bullying incidents as "state-created" danger under Section 1983"), *report and recommendation adopted in part, rejected in part*, No. 14-CV-1959 SJF, 2015 WL 1014451 (E.D.N.Y. Mar. 9, 2015); *Morgan v. Bend-La Pine Sch. Dist.*, No. CV-07-173-ST, 2009 WL 312423, at *10 (D. Or. Feb. 6, 2009) (no substantive due process claim for teachers' failure to detect and prevent student-on-student sexual harassment in public school; "members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties."). Principal Yeager's inaction cannot support plaintiff's danger-creation theory.

### (2) Creating a Danger Not Already There

The only affirmative act plaintiff cites is Principal Yeager's alleged misrepresentation that no bullying had occurred. It is unclear that a misrepresentation of this degree or type could ever support a state-created danger claim. Based on the record, however, no reasonable juror could find Principal Yeager made the alleged misrepresentation, so the court need not answer that broader question.

Plaintiff contends his parents met with Principal Yeager and Ms. Haun on September 11, 2014 (the "meeting"), explaining his parents detailed their concerns about plaintiff's behavior at home and asked Ms. Haun and Principal Yeager if they knew of possible causes. *See* PFs 24-25. Plaintiff claims Principal Yeager said he did not, despite knowing about A.S.'s bullying generally, and so misrepresented what he actually knew. *Id.* Plaintiff has not raised a triable issue to support this argument. He cites his mother's deposition, but the cited portion contains testimony about what was happening at home during this time, not what was said in the Meeting. *See* A. Wormuth Dep. 19:12-19; 25:7-14. Other portions of the record, such as the meeting minutes plaintiff's parents signed, do not show that Principal Yeager said he did not know about the bullying. *See* Defs.' Ex. W2 at 5 (signed meeting notes). Moreover,

Mrs. Wormuth's deposition testimony elsewhere undermines plaintiff's argument: Mrs. Wormuth testified that when she vented her concerns to Principal Yeager, he just "sat there" and "never once told us anything in any of those meetings." A. Wormuth Dep. 248:1-9. This testimony directly contradicts plaintiff's argument and reveals precisely the kind of omission upon which a danger-creation claim cannot rely.

Equally important, the relevant bullying incidents happened after the meeting. DF 19-24, 32 (Red bump on the head on September 17, six days after Meeting; bathroom incident on September 30, nineteen days after Meeting). Not one pre-meeting report to Yeager relates to A.S. bullying plaintiff: All pre-meeting emails mention either plaintiff's speech impediment or A.S.'s bullying in general; the emails never link the two. *See* Alfert Decl. Ex. D, ECF No. 131-4 (emails discussing A.S.'s misbehavior, separate from any discussions of plaintiff and plaintiff's speech or behavioral concerns). Even construing all evidence in plaintiff's favor, no reasonable juror could find that at the time of any alleged misrepresentation, Principal Yeager knew A.S. was bullying plaintiff. There is no triable issue as to whether Principal Yeager affirmatively misrepresented his knowledge.

Plaintiff cannot manufacture a triable issue by filing a declaration that baldly proclaims, with no evidentiary support and in the face of compelling contrary evidence, that Principal Yeager affirmatively misrepresented his knowledge. *See* A. Wormuth Decl., ECF No. 121, ¶ 26 (declaring Principal Yeager affirmatively misrepresented what he knew about the bullying plaintiff was enduring); *see also Yeager*[4] *v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir. 2012) (explaining contradictory or "sham" declarations cannot ward off summary judgment unless contradiction is explained and rooted in legitimate confusion). Without any evidence that Principal Yeager misrepresented what he knew, there is no genuine dispute as to whether he affirmatively created or enhanced plaintiff's risk of danger.

---

[4] No relation to Principal Yeager.

Because the record does not allow a reasonable juror to find for plaintiff on his equal protection or substantive due process theories, the court GRANTS summary judgment for Principal Yeager on plaintiff's § 1983 claim.

B.    Disability Discrimination Claims

Plaintiff brings four disability discrimination claims: An ADA Title II claim and a Rehabilitation Act claim against the District (claims two and three); an Unruh Act claim against Principal Yeager and the District (claim five); and an Education Code section 220 claim against the District (claim six).

1.    Claims Two and Three: Federal ADA and Rehabilitation Act Claims

ADA Title II and Rehabilitation Act Section 504 both prohibit public entities from discriminating against people with disabilities by denying them access to or participation in that entity's benefits, services, and programs. *See* ADA Title II, 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); Rehabilitation Act § 504, 29 U.S.C. § 794 ("[N]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). A discrimination claim under either statute requires plaintiff to show that, although he is otherwise entitled to a specific entity's services or programs or activities, that entity discriminated against him or denied him services based on his qualifying disability. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005); *see also Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) ("We examine cases construing claims under the ADA, as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts") (citation omitted).

A plaintiff may invoke two potential liability theories when, as here, a public school student with a qualifying disability sues the school district because of peer harassment: The district either (1) failed to respond to known disability-based bullying or (2) refused to make

17

"reasonable accommodations" to address known bullying. *Duvall v. Cty. of Kitsup*, 260 F.3d 1124, 1138 (9th Cir. 2001). If the plaintiff, as here, seeks damages he must also prove "intentional discrimination" by showing either discriminatory animus or deliberate indifference. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (citations and quotation marks omitted). As discussed below, plaintiff's federal disability claims cannot survive under the first theory, but can under the second.

        a)     First Theory: Did the District Fail to Respond to Disability-Based Bullying?

Plaintiff maintains "[i]t is undisputed that both A.S. and [plaintiff] were perceived as disabled," "there is no evidence in the record that any other child in the class was perceived as being disabled," and that "[r]esearch suggests that children with disabilities are at an increased risk of being bullied and bullying others." Opp'n at 20 (citing Ponton Decl. ¶ 4 and a YouTube video titled "Bullying and Youth with Disabilities and Special Health Needs"). This, plaintiff submits, is enough for a jury to "reasonably infer [] that A.S. was motivated to abuse [plaintiff] based on his perceived disability." *Id.* Not so. As another district court has persuasively explained:

> [E]ven if students with disabilities are more likely to be bullied than students without disabilities, both based on their disabilities and based on other factors, a plaintiff nevertheless does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying. To hold otherwise would convert the ADA and Rehabilitation Act into generalized anti-bullying statutes.

*Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 233 (E.D.N.Y. 2015). The court faulted the plaintiff for lacking a "non-conclusory answer to the dispositive question posed by [his ADA Title II and Section 504 claims]: Why did the fellow student and bus driver bully him? Was it based on his disability? Or was it based on some other reason, such as personal animus?" *Id.*

Although the Ninth Circuit has yet to address the question; a number of other district courts nationwide have, each reaching the same result as *Eskenazi-McGibney*. In *Doe v. Torrington Board of Education*, for instance, the court found a similar ADA claim insufficient

where the plaintiff alleged he had a disability and detailed the frequency with which he was bullied, but never alleged that "anyone actually harassed, bullied, or assaulted him *because of* his disability or perceived disability, rather than some other reason, such as personal animus." 179 F. Supp. 3d 179, 196 (D. Conn. 2016) (original emphasis), *reconsideration granted in part*, No. 3: 15-CV-00452MPS, 2016 WL 6821061 (D. Conn. Nov. 17, 2016). In *Dorsey v. Pueblo School District 60*, a student with hyperglycemia and skeletal weakness alleged her classmates jabbed their fingers into her stomach and side and stole her snacks meant to combat low blood sugar, but the court found the facts supporting the claim insufficient for a disability discrimination claim, citing the missing "necessary factual basis" that links the alleged bullying "even in part, to her claimed disabilities." 140 F. Supp. 3d 1102, 1117 (D. Colo. 2015). *But see D.A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614 (D. Idaho 2013) (finding enough to withstand summary judgment on disability-based harassment claim where classmate testified plaintiff was called a "retard" during class and that "almost everyone in his classes bullied him"; another student said plaintiff was bullied "a noticeable amount of times"; and a physician testified plaintiff was "pretty aggressively bullied and harassed."). Although these decisions arose at the pleading stage, their conclusions are sensible to apply here: A nexus between the alleged disability and the alleged bullying is a prerequisite to a disability-based bullying claim. Whether the shortcoming is identified at pleading or at summary judgment is of no moment.

Here, as in *Torrington* and *Dorsey*, plaintiff has not raised a triable issue that the bullying he suffered may have been linked to his disability. This case differs from *Meridian*: There, the plaintiff's classmates called him a "retard"; here, the only fact in the record plausibly linking A.S.'s harassment to an attribute unique to plaintiff is a single incident when A.S. ridiculed plaintiff's teeth. *See* DF 7; A. Wormuth Dep. 271:9-24. But there is no evidence linking plaintiff's speech impediment to his teeth. Without such a link, the connection is even weaker than that the court in *Dorsey* rejected. *See Dorsey*, 140 F. Supp. 3d at 1117.

The record also includes evidence undermining plaintiff's claim of a link. For instance, A.S. appeared indiscriminate: He kicked and spat on virtually every classmate, disabilities aside, and included his own teacher as a target. *See* DFs 11, 14-15; Haun Dep. 72:4-7.

His violent behavior was triggered by conflict and frustration, not by anything plaintiff did or said. *See* Haun Dep. 72:4-7. He also followed 60 to 80 percent of his classmates into the bathroom, not only plaintiff. *See* PF 12; Haun Dep. 71:1-12. Ms. Haun, who witnessed the bullying daily, had no reason to believe the bullying was linked to plaintiff's disability. *See* DFs 11-13. Even plaintiff's parents, when asked about A.S.'s possible motives for bullying, did not cite plaintiff's disability. *See* A. Wormuth Dep. 271:25-272:18 ("No. I don't – I don't know why."); S. Wormuth Dep., ECF No. 131-16, at 159:8-160:18 (believing A.S. bullied plaintiff because A.S. was abused at home).

In short, the record contains no triable issues as to whether plaintiff's disability motivated the bullying at all, or whether the District knew the bullying was motivated by his disability. Without knowledge, there can be no intent: "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and the failure to act upon that . . . likelihood." *Paradise Valley*, 815 F.3d at 1204 (citation and quotation marks omitted). It is not enough to show plaintiff has a disability and was bullied more than others in his class, without linking the bullying to that disability. If it were, the statutory requirement that a student prove the alleged discrimination was by reason of his disability would be effectively eradicated. Plaintiff's first disability theory cannot survive summary judgment.

b) <u>Second Theory: Reasonable Accommodations Required to Protect Plaintiff from Bullying?</u>

Plaintiff also contends the District failed to reasonably accommodate him before and after the bullying. Unlike the first theory, this second theory does not require proof that the District knew plaintiff was bullied because of his disability. Plaintiff may succeed under the theory by citing a right he was guaranteed under Section 504 and citing evidence that the District violated a § 504 regulation that implements this right. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Plaintiff can succeed under this theory by showing the bullying he endured, no matter the motive, hampered his ability to enjoy a free public education and by showing the District did not provide reasonable accommodations to prevent or address this bullying. *Paradise Valley*, 815 F.3d at 1204 (explaining students may bring a private right of action against a school

district for violating § 504's "reasonable accommodation" and "meaningful access" implementing

regulations) (citing *Lemahieu*, 513 F.3d at 938).

Plaintiff has satisfied these requirements for the purposes of withstanding

summary judgment. He first identifies § 504's mandate that school districts provide a "free

appropriate public education" to students with a qualifying physical or mental impairment that

substantially limits one or more major life activities. Opp'n at 21. He then cites § 504's

implementing regulation that prohibits peer harassment that is "sufficiently serious to deny or

limit a disabled student's ability to participate in or benefit from the school's education programs

and activities." *Id*. (citing 34 C.F.R. § 104.33(a)). When a student with a qualifying disability is

harassed for any reason, it triggers the school's § 504 responsibilities because the harassment

could deny the student access to "free appropriate public education" by hampering their

performance, and the school "is required to undertake a fact-specific investigation to determine

what constitutes a reasonable accommodation." *Paradise Valley*, 815 F.3d at 1207 (citation

omitted).

Factually, plaintiff cites evidence showing the bullying he endured affected his

mental health and interfered with his academic performance and his ability to participate in

school services, activities and privileges. *See* Ponton Decl. ¶ 3 (discussing plaintiff's post-

traumatic stress disorder diagnosis); Schwartzberg Decl. ¶ 51 (same, and discussing his need for

homeschooling throughout Kindergarten, and his fear of returning to school for first grade); A.

Wormuth Decl. ¶¶ 24-25 (same). The effects of the bullying, plaintiff submits, will profoundly

and negatively affect his education going forward. Schwartzberg Decl. ¶ 52. The District has not

addressed these assertions, no less attempted to rebut them.

Plaintiff also must raise a triable issue as to the District's deliberate indifference to

A.S.'s alleged misconduct. He need not show the District knew he was being bullied because of

his disability; rather, he need only show the District (1) knew the bullying was substantially likely

to harm plaintiff's right to a free appropriate public education and (2) did not provide reasonable

accommodations to diminish that likelihood. *See Lemahieu*, 513 F.3d at 938 (public entity can be

liable for damages "if it intentionally or with deliberate indifference fails to provide meaningful

access or reasonable accommodation to disabled persons.").  Plaintiff has established triable

issues as to both elements: There is enough evidence for a reasonable juror to conclude the

District knew plaintiff had a qualifying disability before school started, based on his parents'

report to the District; knew he was being bullied since the first week of school, based on Ms.

Haun's reports to Principal Yeager; knew a volatile bully picked on plaintiff disproportionately;

and knew the bullying was affecting plaintiff's school performance and enjoyment.  *See* PFs 6-8,

11, 22.  Considering defendants do not address, let alone rebut plaintiff's "reasonable

accommodation" theory, this theory survives summary judgment.[5]

c)     <u>Conclusion</u>

The court GRANTS summary judgment as to the first disability theory, but

DENIES summary judgment as to the second theory.  Accordingly, plaintiff's ADA and

Rehabilitation Act disability discrimination claims will proceed to trial, limited to the District's

failure to provide reasonable accommodations.

2.     <u>Claims Five and Six:  State Disability Claims</u>

Plaintiff also brings state law disability discrimination claims.  He sues Principal

Yeager and the District for violating California's Unruh Civil Rights Act (claim five), and he also

sues the District for violating California's Education Code (claim six).  Plaintiff's legal theories

under both claims mirror those analyzed under his ADA and Rehabilitation Act claims.

a)     <u>California's Government Claims Act Bar</u>

Defendants argue the District is entitled to summary judgment because the

Government Claims Act (the "Act"), which mandates all damages claims brought against a public

entity first be presented to and rejected by the entity, bars both of plaintiff's state disability

discrimination claims.  *See* Cal. Gov't Code §§ 910, 945.4 (explaining presented claim must

include claimant's name and address, names of public employees involved, and description of

---

[5] Although unclearly, plaintiff also signifies a potential "hostile education" claim.  *See* Opp'n at 10 ("A.S.'s behaviors had infected the entire classroom, creating what Yeager admitted was a hostile educational environment.").  The court is unaware of any court within the Ninth Circuit recognizing such a claim under the ADA or § 504 and so declines to recognize such a claim here.  *See Garedakis v. Brentwood Union Sch. Dist.*, 183 F. Supp. 3d 1032, 1046 (N.D. Cal. 2016) (recognizing the same void and declining to recognize such a claim).

incident, including date, place and proclaimed damages); *Dalton v. East Bay Mun. Util. Dist.*, 18 Cal. App. 4th 1566, 1571 (1993). The Act's purpose is to give public entities sufficient information to investigate and appropriately resolve claims and plan for potential liabilities, *DiCampli-Mintz v. Cty. of Santa Clara*, 55 Cal. 4th 983, 994 (2012), so the timely claim must fairly reflect the factual circumstances underpinning it, *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 376 (2014) ("even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim.") (citation omitted).

Defendants concede plaintiff filed a timely claim, but argue he referenced only the school's negligent supervision and insufficient discipline, and so did not put the District on notice of a potential disability discrimination claim. *See* DF 54-56. Defendants concede the claim secondarily referenced plaintiff's speech impediment, but argue this is not enough.

Defendants' position is unduly restricting. The Act's filing requirement serves to alert a public entity that something happened and point the entity's investigation in the right direction; it is not designed to eliminate meritorious claims. *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 449 (2004) ("[the statutes] should be given a liberal construction to permit full adjudication on the merits.") (citation and quotation marks omitted; brackets in original). "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts." *Id.* at 447 (citation and quotation marks omitted).

Plaintiff provided the District fair notice of his possible disability discrimination claims. Plaintiff's timely filing notified the school about the relevant circumstances, dates and parties involved in an ongoing incident during which a student with a known disability was bullied and harassed. That plaintiff has now refined and added liability theories based on this same series of events does not render his filing incomplete. The Act does not bar plaintiff's state disability discrimination claims against the District.

b)    <u>Merits Analysis</u>

(1)    <u>Unruh Act Claim</u>

Plaintiff also brings an Unruh Act claim against both the District and Principal Yeager.  *See* Cal. Civ. Code § 51(f) ("All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.").

The court denied summary judgment on plaintiff's ADA claim based on the missing nexus between plaintiff's disability and the harassment he endured.  The court therefore denies summary judgment on the Unruh Act claim as it requires the same nexus.  *Cohen v. City of Culver City*, 754 F.3d 690, 701 (9th Cir. 2014) (explaining Unruh Act disability discrimination claims are derivative of ADA disability discrimination claims; *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009) (same); *see also* Opp'n at 24 ("The legal theories behind th[is] claim[] mirror the Federal claims discussed above").

(2)    <u>Education Code</u>

Section 220 of the California Education Code prohibits disability discrimination based on protected characteristics, including disability, in any "program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."  *See* Cal. Educ. Code § 220.  To succeed on his section 220 claim, plaintiff must show he suffered severe, pervasive and offensive discrimination or harassment on the basis of disability, which effectively deprived him of equal access to educational benefits and opportunities.  *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008) (citation omitted).  He must also show the District acted with deliberate indifference in the face of "actual knowledge" of such discrimination or harassment.  *Id.*

For the same reasons as explained above in analyzing plaintiff's ADA claim, plaintiff has not shown the harassment he faced was because of his disability.  *See supra* Part III.B.1.a (no genuine dispute of fact regarding link between plaintiff's disability and the bullying

24

1    he faced, nor any evidence that the District should have known of such a link). Without this

2    showing, no reasonable juror could find plaintiff suffered "pervasive" and "severe" disability-

3    based harassment or that the District had "actual knowledge" of it. The court GRANTS summary

4    judgment for the District on this claim.

5          C.       Claim Four: Negligence

6           Plaintiff claims Principal Yeager, Superintendent Nicholas and Assistant

7    Superintendent Gill were negligent because they inadequately supervised A.S. and that the

8    District is vicariously liable for this negligence. FAC ¶¶ 56-61. The individual defendants argue

9    they are immune from any negligence liability, shielded by state immunity for discretionary

10    decisions and federal immunity for acts and omissions related to maintaining control in the

11    classroom. As explained below, the individual defendants are immune from liability, but the

12    claim partially survives as to the District.

13          1.       State Discretionary Immunity

14           Government Code section 820.2 shields public employees from liability for acts or

15    omissions resulting from exercising discretion unless such acts expressly violate a statute. Cal.

16    Gov't Code § 820.2 ("Except as otherwise provided by statute, a public employee is not liable for

17    an injury resulting from his act or omission where the act or omission was the result of the

18    exercise of the discretion vested in him, whether or not such discretion be abused.").

19           This "discretionary immunity," while broad, is not limitless. It applies only to

20    "basic policy decisions" or "quasi-legislative policy making [decisions]," not to "lower-level, or

21    'ministerial,' decisions that merely implement a basic policy already formulated." *Caldwell v.*

22    *Montoya*, 10 Cal. 4th 972, 981 (1995) (quotation marks omitted) (finding school board's decision

23    to replace district's highest appointed official was discretionary).

24           The question, therefore, is whether the individual defendants' challenged decisions

25    reflect the level of discretion section 820.2 contemplates. The answer, as to defendants Gill and

26    Nicholas, is yes. Plaintiff contends these defendants, as superintendent and assistant

27    superintendent, negligently failed to implement school-wide policies. Opp'n at 24 ("Defendants

28    Nicholas and Gill were both directly responsible for the implementation of policies, including the

districts' bathroom policies and the school's anti-bullying policies and their negligence in implementing these policies was a factor in causing the harm H.W. experienced.").  Whether a specific policy is proper under the circumstances is precisely the kind of decision section 820.2 immunizes.  *See Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (state immunity protects "basic policy decisions") (citation omitted); *Johnson v. State*, 69 Cal. 2d 782, 794 (1968) (explaining "areas of quasi-legislative policy-making . . . are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision.") (citation omitted); *see also Kemmerer v. Cty. of Fresno*, 200 Cal. App. 3d 1426, 1437 (1988) (explaining discretionary acts entitled to immunity are those requiring judgment or choice, "such as an equitable decision of what is just and proper under the circumstances.") (citation omitted).  The court GRANTS summary judgment for defendants Gill and Nicholas on plaintiff's negligence claim.  By extension, the District cannot be held liable for negligence based on Gill's or Nicholas's discretionary acts.  Cal. Gov't Code § 815(a) ("Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.").

As to Principal Yeager, the answer is less clear.  He is not automatically immune from liability for all his responses to plaintiff's bullying just because they may have involved discretion.  *See Martinez*, 141 F.3d 1373 (state immunity statute protects basic policy decisions, not operational or ministerial decisions, even though they may involve some discretionary choices); *see also J.E.L. v. S.F. Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1202 (N.D. Cal. 2016); *Jones v. Kern High Sch. Dist.*, No. CV-F-07-1628 OWW/TAG, 2008 WL 3850802, at *28 (E.D. Cal. Aug. 14, 2008) (denying blanket immunity for acts relating to "the direct and immediate supervision of school children").

For immunity to apply, Yeager must show he "actually render[ed] a considered decision," and must show that "in deciding to perform (or not perform) the act which led to [the] plaintiff's injury, [the employee] consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives."  *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal. 3d

780, 794 (1985) (original emphasis) (citation omitted); *cf. Walsh*, 827 F. Supp. 2d at 1122

(denying immunity where record showed no such deliberation). Courts appear to apply this rule

inconsistently: Some courts declare all disciplinary decisions discretionary, *see, e.g.*, *Kemmerer*,

200 Cal. App. 3d at 1437; others decline to liberally immunize all disciplinary decisions, *see, e.g.*,

*Corales v. Bennett*, 488 F. Supp. 2d 975, 990 (C.D. Cal. 2007); *C.B. v. Sonora Sch. Dist.*, 691 F.

Supp. 2d 1123, 1152 (E.D. Cal. 2009).

   Here, Principal Yeager has not engaged in this detailed analysis, arguing instead

for blanket discretionary immunity. The court therefore cannot find section 820.2 immunizes

Principal Yeager for any liability based on his disciplinary decisions.

     2.  Federal Immunity: Controlling the Classroom

   Principal Yeager is immune, however, under the federal Coverdell Teacher

Protection Act of 2011, 20 U.S.C. § 6731 *et seq.* This statute immunizes teachers and

administrators for acts and omissions in connection with maintaining control in the classroom.

Coverdell immunity, which extends to lower-level, daily supervisory and disciplinary decisions,

aims "to provide teachers, principals, and other school professionals the tools they need to

undertake reasonable actions to maintain order, discipline, and an appropriate educational

environment." *Id*. § 6732. Immunity applies only to actions aimed at controlling or disciplining a

student or maintaining order or control in the school. *Id*. § 6736(a) (limitations on liability).

Section 6736(a) imposes five more requirements: The cited conduct must (1) fall within the scope

of the school employee's responsibilities; (2) conform with federal, state, and local laws; (3) fall

within what the official is licensed, certified or authorized to do; (5) involve no willful or criminal

misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the

rights or safety of the individual harmed; and (6) involve no vehicle. *Id*.

   Plaintiff's allegations themselves show Principal Yeager is entitled to Coverdell

immunity, and plaintiff argues nothing in opposition to alter this conclusion. Plaintiff has alleged

facts showing Yeager's allegedly negligent conduct pertained to controlling and disciplining a

student, A.S., FAC ¶ 59, and that he was acting within the course and scope of his employment,

*Id.* ¶¶ 7, 10, 11. Plaintiff's negligence claim involves no allegations that Principal Yeager

violated any laws, nor allegations that Principal Yeager's conduct was willful, criminal, grossly negligent, reckless, conscious or flagrant. *See Id.* ¶¶ 56-61. Plaintiff's other claims cite laws Principal Yeager allegedly violated, namely federal and state civil rights laws, but these allegations are irrelevant here. What matters is that none of the alleged violations of law pertain to the negligence claim specifically, the only claim for which Principal Yeager seeks immunity. *See C.B.*, 691 F. Supp. 2d at 1149 (immunity applied only to intentional infliction of emotional distress (IIED) claim). While plaintiff conclusively states that whether defendants were grossly negligent remains disputed, plaintiff has neither alleged nor argued that Principal Yeager's conduct here amounts to gross negligence. *See* Opp'n at 22-23, 26. Finally, Principal Yeager is properly credentialed, DF 17, 50, 52, and no incident involving plaintiff involved a vehicle.

Principal Yeager is eligible for Coverdell immunity in the face of plaintiff's negligence claim. The court GRANTS summary judgment for him on this claim.

### 3. District's Vicarious Liability

The Coverdell Act's plain wording limits its applicability to individual teachers or administrators, and thus does not extend to the District. 20 U.S.C. § 6732 (explaining statutory purpose pertains to "teachers, principals, and other school professionals"). Accordingly, the District may still be held vicariously liable for Principal Yeager's negligence.

"[A] school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." *Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 513 (1978) (citations omitted). School employees supervising students are charged with a standard of care that a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances. *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 869 (2012); *Dailey v. L.A. Unified Sch. Dist.*, 2 Cal. 3d 741, 747 (1970). Because "a principal task of supervisors is to anticipate and curb rash student behavior[,]" failing to "prevent injuries caused by the intentional or reckless conduct of the victim or a fellow student may constitute negligence." *Dailey*, 2 Cal. 3d at 748-49; *see also Lucas v. Fresno Unified Sch. Dist.*, 14 Cal.

App. 4th 866, 871-72 (1993) (liability can arise when one student injures another as the result of negligent or nonexistent supervision).

Here, plaintiff contends the school's inadequate supervision allowed A.S. to harass and inappropriately touch plaintiff. Plaintiff argues Principal Yeager was negligent because he was notified A.S. was harassing students and he knew the bathroom stalls lacked doors, yet rejected Ms. Haun's plea for more help in supervising A.S. generally and the bathrooms specifically. *See* Opp'n at 22-23 (citing Haun Dep. 71:25-73:3, 104:5-22, 107:16-108:9). While plaintiff contends Superintendent Nicholas and Assistant Superintendent Gill were negligent because they were "directly responsible for the implementation of policies, including the district's bathroom policies and the school's anti-bullying policies," Opp'n at 24, as explained above, plaintiff cannot base his negligence claim on Nicholas's or Gill's conduct because their only involvement pertained to the discretionary decisions that are immunized under Government Code section 820.2.

The District's negligence liability thus rests entirely on Principal Yeager's actions and whether Principal Yeager negligently supervised A.S. is precisely the type of fact-intensive question a jury should resolve. *Dailey*, 2 Cal. 3d at 749 n.6 ("It is the uniform rule that the determination of whether the supervision is adequate, that is, whether it amounts to due care, is a question of fact for the jury.") (citations omitted).

Defendants' arguments that A.S., not Principal Yeager, caused the harm, that the injuries were unforeseeable, and that Principal Yeager reasonably responded to A.S.'s misconduct, are unpersuasive. That a third party was the direct cause of plaintiff's harm does not absolve the District of liability if Principal Yeager negligently supervised the situation overall. *Dailey*, 2 Cal. 3d at 750-51. That A.S.'s mode of harassment changed from hits and slaps to inappropriate bathroom touching does not render the latter unforeseeable. *See Dailey*, 2 Cal. 3d at 751 (exact injuries need not have been foreseeable; it is enough that "a reasonably prudent person would foresee that injuries of the same general type would be likely to occur in the absence of adequate safeguards.") (citations omitted); *J.H. v. L.A. Unified Sch. Dist.*, 183 Cal. App. 4th 123, 128-29 (2010) (plaintiff sexually assaulted at school by student with history of

unrelated disciplinary problems; foreseeability of harm was factual question for jury). Inappropriate bathroom conduct is a type of harm one might anticipate from unsupervised children in a doorless bathroom. *See M.W. v. Panama Buena Vista Union Sch. Dist.*, 110 Cal. App. 4th 508, 521 (2003) ("[T]hat a particular act . . . in a school bathroom may have been unforeseeable does not automatically exonerate the District from the consequences of allowing students . . . unrestricted access . . . with wholly inadequate supervision.").

Finally, Principal Yeager's lengthy justifications for why he and Ms. Haun dealt with A.S. the way they did, citing A.S.'s young age and recent arrival at the school, affirm that the question is inherently fact-intensive. *See* Mot. at 20 (citing Yeager Decl. ¶ 27). Several fact-intensive questions are either disputed or unanswered. Was it reasonable to reject Ms. Haun's pleas for more help supervising A.S.? Before accepting A.S. as a student at the school, should Principal Yeager have asked about his violent behavior at his former school? How did Principal Yeager's response here compare to his responses in similar scenarios? How did his response compare to any professional standard for children of that age? These questions are best answered by a jury.

There is sufficient evidence that Principal Yeager acted negligently here to survive summary judgment. Should the jury find liability, the District may be vicariously liable for his conduct even though Principal Yeager enjoys Coverdell immunity.

a) <u>Conclusion</u>

The individual defendants are immune from negligence liability: Superintendent Nicholas and Assistant Superintendent Gill are entitled to section 820.2 immunity; Principal Yeager is entitled to Coverdell Act immunity. The negligence claim will proceed to trial against only the District, based on potential vicarious liability for Principal Yeager's conduct.

/////

/////

/////

/////

/////

IV.    CONCLUSION

The court adjudicates defendants' summary judgment motion as follows:

- Section 1983 claim against Principal Yeager (claim one) is GRANTED in full;

- ADA and Rehabilitation Act disability discrimination claims against the District (claims two and three) are DENIED as to the reasonable accommodation theory, but GRANTED as to all other theories;

- Negligence claim against all defendants (claim four) is GRANTED as to Gill, Nicholas and Principal Yeager, but DENIED as to the District;

- Unruh Act disability discrimination claim against Principal Yeager and the District (claim five) is DENIED in full; and

- Education Code section 220 claim against the District (claim six) is GRANTED in full.

The District and Principal Yeager are the only remaining defendants. Principal Yeager faces potential liability for Unruh Act disability discrimination (claim five). The District faces potential liability, under only a reasonable accommodation theory, for disability discrimination claims under the ADA (claim two), the Rehabilitation Act (claim three) and the Unruh Act (claim five). The District also faces potential liability for negligence (claim four).

Plaintiff is directed to file on the public docket within seven days the Exhibit C, referenced in paragraph 18 of Hansen's declaration, ECF No. 114. Plaintiff shall redact the full name of A.S. from any pages of Exhibit C on which it appears, leaving only the first initials.

The Final Pretrial Conference recently reset to January 12, 2018 is confirmed.

IT IS SO ORDERED.

This resolves ECF No. 102.

DATED:  December 12, 2017.

_____
UNITED STATES DISTRICT JUDGE